479 A.2d 460

COMMONWEALTH of Pennsylvania, Appellee,

v.

Leslie C. BEASLEY, Appellant.

Supreme Court of Pennsylvania.

Argued April 9, 1984.

Decided June 28, 1984.

L. Carter Anderson, Philadelphia (court-appointed), for appellant.

Robert B. Lawler, Jane Greenspan, Asst. Dist. Attys., Marion E. MacIntyre, Deputy Atty. Gen., for appellee.

## OPINION OF THE COURT

FLAHERTY, Justice.

In a trial by jury in the Court of Common Pleas of Philadelphia County, the appellant, Leslie C. Beasley, was found guilty of murder of the first degree and possession of an instrument of crime. In connection with the murder conviction, appellant was sentenced to death, and for the possession offense he was sentenced to 11½ to 23 months imprisonment. The instant direct appeal ensued.

## I. BACKGROUND

The homicide for which appellant was tried in the present case occurred on April 13, 1980, in Philadelphia, when Keith Singleton was fatally wounded by a shotgun blast while riding a bicycle. Appellant fled from the scene of the crime, and, until July 16, 1980, remained at large. On the latter date, appellant again committed murder, the victim this time being a Philadelphia police officer. Appellant was brought to trial and convicted in the police killing case prior to commencement of trial for the Singleton homicide. See *Commonwealth v. Beasley*, 504 Pa. 485, 475 A.2d 730 (1984).

Immediately after shooting the police officer on July 16, 1980, appellant fled from the scene in a van which was pursued and eventually stopped by a police detective. Upon being stopped, appellant exited from the van and was chased by the detective a short distance before stumbling to the ground and being apprehended. While appellant lay upon the ground, the detective noticed that the van contained yet another person, and, in the course of positioning himself to order that other person out of the van, the detective saw appellant throw his shirt into the air and then heard a loud thud, after which the shirt fell back to the ground. At the time he threw his shirt into the air, appellant was recumbent upon the ground in close proximity to an eight foot high cinderblock wall. Police recovered from the roof above the cinderblock wall a sawed-off shotgun, in addition to a revolver that appellant had used to kill the policeman. While appellant was in custody in connection with the police shooting, it was scientifically determined that the shotgun had been used in the Singleton homicide three months earlier; hence, appellant was charged with an additional crime, the Singleton murder.

## II. TRIAL

At trial in the Singleton case, the sawed-off shotgun was admitted into evidence, as was a description of appellant's being apprehended on July 16, 1980, but no mention was

made of the reason for appellant's having been pursued by police on that date. During cross-examination of the detective who found the shotgun, defense counsel intentionally elicited, for the first time in the trial, the fact that an additional weapon, the revolver, was found on the roof with the shotgun. No mention was made, however, of the fact that the revolver had been used to commit a crime. Cross-examination proceeded in a manner directed at showing the improbability of appellant having been able to throw two weapons onto the roof, from a reclining position on the ground several feet from the cinderblock wall. In pursuing this line of questioning, defense counsel's strategy was to show that appellant threw his shirt onto the roof in an effort to disassociate himself from a quantity of marijuana which was later discovered by detectives to have been in the shirt pocket, and, thus, to show that the shirt hit the roof, by mere coincidence, near two weapons that had been placed there at a previous time by some other person.

To rebut the defense's theory as to the manner in which the weapons came to be upon the roof, the prosecution introduced testimony that the revolver recovered from the roof was the same one that appellant had been observed to possess only minutes prior to his apprehension. Also, several shotgun shells found in the van from which appellant fled on July 16, 1980 were admitted into evidence, and these were positively identified as having been discharged from the shotgun in question.[1] The effect of this rebuttal evidence was to imply that the weapons recovered from the roof had been thrown there by appellant.

At no time during the guilt determination phase of trial was evidence introduced that appellant committed a shooting on July 16, 1980. Appellant contends, however, that the jury would necessarily have surmised such criminal

1. There was also rebuttal testimony that the revolver contained five spent rounds when it was found on the roof, and that, at the time of his arrest, appellant had in his possession a glove of the same type as he had been seen carrying earlier that day, but no testimony was offered that the revolver or the glove had been utilized in any criminal incident.

involvement, based upon the fact that appellant was pursued and apprehended on that date, and the fact that appellant was shown to have been in possession of a revolver. It is well settled that unrelated criminal conduct of an accused is generally inadmissible to prove his commission of the crime for which he is being tried. *Commonwealth v. Styles*, 494 Pa. 524, 527, 431 A.2d 978, 980 (1981). Nothing in the record, however, indicates that appellant was pursued on July 16, 1980 as a result of having committed a crime on that date, and the revolver proven to have been in appellant's possession was not shown to have been used in the commission of any crime.

■ Even assuming, *arguendo*, that testimony as to appellant's arrest on July 16, 1980 raised some suggestion of criminal activity unrelated to the Singleton homicide, there is no merit to the contention that the shotgun, and all testimony relating to July 16, 1980, should have been suppressed. The evidentiary value of showing that appellant was, three months after the Singleton shooting, in possession of the murder weapon greatly outweighed any possible prejudice to the defense. See *Commonwealth v. Travaglia*, 502 Pa. 474, 492–493, 467 A.2d 288, 297 (1983) (exceptions to general rule of inadmissibility of evidence of other crimes). Evidence of the shotgun, and of the events of July 16, 1980 linking appellant to that weapon, served to identify appellant as the perpetrator of the murder for which he was being tried, and supported the testimony of two eyewitnesses who indicated that appellant committed the Singleton murder.[2]

Further, appellant should not be heard to complain of the jury's being informed of the revolver, for it was the defense which first elicited, during cross-examination of a detective, the fact that the revolver existed, as well as the fact that the revolver was found near the shotgun. See *Commonwealth v. Sisco*, 484 Pa. 85, 88, 398 A.2d 955, 957 (1979) (no error where defense introduces the allegedly objectionable

**2.** The evidence adduced at trial was clearly sufficient to support the verdict of guilt.

evidence first); *Commonwealth v. Cain*, 471 Pa. 140, 156 n. 11, 369 A.2d 1234, 1242 n. 11 (1977) (Opinion in Support of Affirmance); *Commonwealth v. Alston*, 461 Pa. 664, 667, 337 A.2d 597, 598 (1975); *Commonwealth v. Bell*, 417 Pa. 291, 294, 208 A.2d 465, 467 (1965). Once the defense had elicited testimony regarding the revolver to advance its theory of the case, that someone other than appellant placed weapons on the roof, the prosecution was not required to refrain from rebutting that theory, and, hence, was entitled to show that the weapons recovered from the roof were ones that appellant had possessed shortly before his arrest. See *Commonwealth v. Brown*, 489 Pa. 285, 302 n. 6, 414 A.2d 70, 78 n. 6 (1980); *Commonwealth v. Clark*, 454 Pa. 329, 336–337, 311 A.2d 910, 913–914 (1973). Thus, by introducing testimony as to the existence of a revolver upon the roof, the defense opened the door for the prosecution to rebut the inference thereby created.

■ Appellant's next claim of error is that the shotgun used in the Singleton homicide was transported into the courtroom in a box which the property custodian had labeled, in what was claimed by defense counsel to have been one-inch high letters, "Police shooting, homicide of police officer." The box was placed on a table allegedly six feet from the nearest juror, but as soon as the label was discreetly brought by defense counsel to the attention of the prosecutor it was immediately covered.

During a recess, defense counsel moved for a mistrial,[3] whereupon the trial court examined the box and determined that its label was not readable, at least from the bench. We

3. Defense Counsel: I'm sorry. Your Honor, the defense moves for a mistrial. As I was standing over here at the end of the jury box I noticed this exhibit lying on the Commonwealth's table which says, in letters at least one inch high, "police shooting", and underneath, "homicide of police officer", and this was lying in a position as I have it here, with one end, I would say, no more than six feet from the nearest juror. And if I could read it from my chair over there, Your Honor—

The Court: Well, I can't read it from you holding it up from the bench, and I don't know whether anybody else can. I will deny your motion, but I think it should be kept out of here.

have reviewed the record and find no adequate basis upon which to determine the exact position of the box in the courtroom, or the length of time that the box was present, or upon which to conclude that the box's label could have been read by any of the jurors.

Nevertheless, the prosecutor's blatant and inexcusable inattention in bringing the labeled box into the courtroom is to be most strongly condemned. Such conduct needlessly injected this case with an issue that, under less speculative circumstances, could be deemed to have impaired the integrity of the trial. In the present case, however, any prejudice to the defense is of such a speculative nature as not to require that a new trial be granted.

## III. DEATH SENTENCE

At the penalty stage of this proceeding the prosecutor introduced evidence that appellant had, prior to the instant trial, been convicted of murder on two separate occasions. Subsequently, the jury found, upon an ample evidentiary basis, that there was present the aggravating circumstance that appellant "has a significant history of felony convictions involving the use or threat of violence to the person," [4] 42 Pa.C.S.A. § 9711(d)(9), and that no mitigating circum-

Prosecutor: Well, I might add that, as soon as [defense counsel] brought that to my attention—this, by the way, for the record, contains the sum items of evidence which will be used in this trial, and when you take it out from the custodian—when you take out a property receipt of anything to do with weapons, you have to take out everything, according to administrative procedures up there, or you don't get anything at all. So everything had to be taken out. As soon as [defense counsel] noticed that, at least he could see it when he went up to it and I immediately covered it, at his request, and maintained the cover through the examination.

Defense Counsel: That is true. I have no dispute with that. My problem was the fact that it was lying there in plain view for, I don't know, how long.

The Court: Well, please keep those items covered, and away from the possible view of the jury.

Prosecutor: Yes, sir. Thank you.

4. We regard as frivolous appellant's contention that two prior murder convictions are insufficient to constitute a "significant" history of felonies involving violence to the person.

stances were present, 42 Pa.C.S.A. § 9711(e). When an aggravating circumstance is present, and no mitigating circumstances are found, the jury is required to return a verdict of death. 42 Pa.C.S.A. § 9711(c)(1)(iv). Accordingly, appellant was sentenced to death.

■ It is alleged that the jury was improperly permitted to consider as a prior murder conviction a verdict of guilt of murder of the first degree rendered three months prior to the instant trial, a verdict as to which a judgment of sentence had not yet been entered because post-trial motions were still pending. Post-trial motions had been continued at the request of the defense, but were denied subsequent to the instant trial. In short, it is argued that a verdict of guilt may not be considered a prior "conviction," constituting an aggravating circumstance under 42 Pa.C. S.A. § 9711(d)(9) supra., until a judgment of sentence has been entered. This Court recently rejected this argument in connection with determining what constitutes a conviction for purposes of one of the other enumerated aggravating circumstances set forth in the same sub-section of the sentencing code, 42 Pa.C.S.A. § 9711(d)(10), which states that it is an aggravating circumstance when "[t]he defendant has been *convicted* of another Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable...." (emphasis added). *Commonwealth v. Travaglia*, 502 Pa. 474, 495–301, 467 A.2d 288, 298–300 (1983). In *Travaglia*, we held that a judgment of sentence need not already have been entered following a finding of guilt in order for the finding to be considered as a conviction constituting the aggravating circumstance in (d)(10), thus ruling that the legislature employed the term "convicted" in this provision to mean "found guilty" rather than "found guilty and sentenced."

There is no reason to believe that the meaning accorded by legislative references to convictions was not consistent in consecutively enumerated provisions listing aggravating circumstances within the same sub-section of the sentencing code. Thus, within 42 Pa.C.S.A. § 9711(d), conviction for

purposes of (d)(9) should be construed as having the same meaning as does conviction for purposes of (d)(10), thus allowing verdicts of guilt for which judgments of sentence have not yet been imposed to be considered by the jury as part of a defendant's history of felony convictions involving the use or threat of violence to the person. Under this approach, no error accrues unless the subsequently entered judgments of sentence are overturned on appeal. This comports with the traditional function of the penalty stage to focus upon aspects of a defendant's character. See *Commonwealth v. Bell*, 417 Pa. 291, 296, 208 A.2d 465, 468 (1965). Character is reflected in verdicts of guilt, regardless of whether judgments of sentence have yet been entered.

■ Appellant's next contention is that error was committed when evidence was admitted that the verdict of murder of the first degree rendered three months prior to the present trial resulted from appellant's having killed a police officer, and further prejudice is claimed to have arisen from the jury's being informed that the jury in the police killing case returned a verdict of death. The relevant sentencing provision, 42 Pa.C.S.A. § 9711(d)(9) supra., contains no *express* reference to the factual settings of past crimes or to the sentences imposed as being matters appropriate for the jury's consideration. Thus, it is asserted that the prosecution's evidence should have been limited to establishing the mere fact that appellant was convicted of previous murders, without elaboration as to the facts and circumstances, or as to the types of sentences imposed. Inasmuch as 42 Pa.C.S.A. § 9711(d) begins with the preface, "Aggravating circumstances shall be limited to the following ...", it is clear that the legislature did not intend consideration by the jury of matters extraneous to the enumerated aggravating circumstances. The relevant provision, (d)(9), focuses upon past "convictions" as being an aggravating circumstance. We do not believe the legislative reference to "convictions" is so narrow in scope as to render extraneous all of the facts and circumstances of the convictions, or the sentences imposed.

In this Commonwealth, sentencing has long been regarded as having at its core a function of character analysis, See *Commonwealth v. Bell,* supra., and the central idea of the present sentencing statute is to allow a jury to take into account such relevant information, bearing upon a defendant's character and record, as is applicable to the task of considering the enumerated aggravating circumstances. Consideration of prior "convictions" was not intended to be a meaningless and abstract ritual, but rather a process through which a jury would gain considerable insight into a defendant's character. The nature of an offense, as ascertained through examination of the circumstances concomitant to its commission, has much bearing upon the character of a defendant, and, indeed, without reference to those facts and circumstances, consideration of "convictions" would be a hollow process, yielding far less information about a defendant's character than is relevant.

Convictions are defined by the essential and necessary facts upon which they are based, and judgments of sentence flow naturally from, and form an integral part of, those convictions. Thus, reason impels that the construction of the term "convictions" in 42 Pa.C.S.A. § 9711(d)(9) be such as to permit consideration of the essential and necessary facts pertaining to the convictions, including the circumstances of the crimes and the sentences imposed. In the present case, therefore, no error was committed when the jury was informed that one of appellant's prior murder convictions involved the killing of a police officer, and that the jury in that case had returned a verdict of death.[5]

■ Finally, in accordance with our duty to review sentences of death from the standpoint of their proportionality to sentences imposed in similar cases, *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 62, 454 A.2d 937, 961 (1982), cert. den., 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983),

---

5. There is no support in the record for appellant's claim that the jury regarded his life as not truly being in its hands, due to awareness of this preexisting death verdict, and, hence, appellant's contention that the death question was not given serious consideration is unfounded speculation.

we have reviewed the sentence imposed upon appellant in light of findings of the Pennsylvania Death Penalty Study. See *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984), and perceive no excess or disproportionality in the sentence imposed.

Judgments of sentence affirmed.

LARSEN, J., filed a dissenting opinion.

NIX, C.J., did not participate in the consideration or decision of this case.

LARSEN, Justice, dissenting.

I do not agree with the conclusion reached by the majority that the prejudicial effect of the presence on the Commonwealth's table of an evidence box conspicuously labelled "Police shooting—homicide of police officer" is, under the circumstances of this case, "of such a speculative nature as not to require that a new trial be granted." (At 286).

Both counsel and the trial court were obviously concerned lest the introduction at trial of the evidence concerning appellant's apprehension convey the impression that appellant was involved in unrelated criminal activity. Such concern over the impression made by the evidence that was introduced at trial is greatly exacerbated by the possible exposure of the jury to evidence that was *not* introduced. "Due process requires that the jury consider *only the evidence developed before it at trial.*" *Commonwealth v. Bruno*, 466 Pa. 245, 262, 352 A.2d 40, 49 (1976) (emphasis added).

In *Commonwealth v. Bobko*, 453 Pa. 475, 309 A.2d 576 (1973), this Court reversed the appellant's conviction because the jury panel had seen a list of all of the criminal prosecutions scheduled for that term in the prosecuting county, which list indicated that the defendant was being prosecuted in an additional trial on unrelated criminal charges. We stated:

We believe that presenting the jury with information indicating that appellant was charged with other crimes is prejudicial error. Certainly, possession by the jury of a

list of charges pending against the appellant might well have predisposed the jurors to believe the appellant guilty, thus denying him the presumption of innocence. The prejudice created requires that the conviction be set aside and that a new trial be granted.

453 Pa. 475, at 477, 309 A.2d 576, at 577.

Similar concerns were presented in *Commonwealth v. Stewart*, 449 Pa. 50, 295 A.2d 303 (1972). In that murder case, after trial had commenced defense counsel became aware that the murder victim's father had been a member of the panel from which the jury was selected. The trial court denied the defense motion to withdraw a juror without a hearing or inquiry to determine whether any of the jurors had made any significant association with the victim's father. In *Stewart,* we wrote:

> The requirement that a jury's verdict "must be based upon the evidence developed at the trial" goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury.
>
> \*       \*       \*       \*       \*       \*
>
> In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the "evidence developed" against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.

449 Pa. 50, at 54, 295 A.2d 303, at 305, *quoting from Turner v. Louisiana,* 379 U.S. 466, 472–73, 85 S.Ct. 546, 549–50, 13 L.Ed.2d 424 (1965). In reversing the lower court and granting a new trial, we further observed:

> We realize that what we are in effect doing is presuming prejudice for the sake of insured fairness; however, this is exactly what the United States Supreme Court did in *Turner, supra.* Moreover, the Court employed this same presumption in the Sam Sheppard case where there was a question of prejudice as a result of pretrial stories in the news media. *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507 [16 L.Ed.2d 600] (1966). [Further citations

omitted]. As was aptly stated by Mr. Justice Black in *In re Murchison,.* 349 U.S. 133, 136, 75 S.Ct. 623 [625, 99 L.Ed. 942] (1955), "our system of law has always endeavored to prevent even the probability of unfairness."
449 Pa. 50, at 56–57, 295 A.2d 303, at 306.

In *Commonwealth v. Bruno,* 466 Pa. 245, 352 A.2d 40 (1976), highly prejudicial publicity regarding the appellant's suppressed confession had occurred during the trial in circumstances rendering it quite likely, though by no means certain, that some jurors may have been exposed to the articles and broadcasts. This Court made the following salient observations:

> Our cases also make clear that the trial court can avoid this presumption of prejudice [arising when the jury is exposed to "inherently prejudicial" publicity] by taking careful precautionary measures. For example, in *Commonwealth v. Dukes,* 460 Pa. 180, 331 A.2d 478 (1975), the jury was drawn from the same panel as the jury in a previous trial of the same defendant. The same situation occurred in *Commonwealth v. Free,* 214 Pa.Super. 492, 259 A.2d 195 (1969), and a new trial was ordered because of the possibility of prejudice. This Court, in *Dukes,* distinguished *Free* because "the trial court was meticulously careful to ascertain that no member of the jury was aware of the previous trial." Each juror was questioned in private, and an extensive voir dire examination was allowed. We held:
>
> > "We are satisfied that the careful precautionary measures taken by the trial judge adequately served to insure the selection of a fair and impartial jury, one untainted by any knowledge that Dukes had been charged with another crime. There was thus no probability of any prejudice to appellant."
>
> *    *    *    *    *    *
>
> *When there is a possibility of highly prejudicial materials reaching the jury, the trial court must take appropriate protective action.* Although the proper precautions are inevitably dictated by the circumstances of each

case, *they must reasonably ensure that no prejudice will occur.*

Here, details of appellant's suppressed confession were the subject of highly prejudicial front page news articles and news broadcasts. Even a random glance at a news rack would have been sufficient to convey the existence of the confession. The court gave an inadequate precautionary instruction to the jury and took no direct action to ensure that they were not exposed to such highly prejudicial information. In such circumstances, the trial court should have questioned each juror as appellant's counsel frequently requested to ensure that the publicity had not in fact reached the jury. The failure to do so denied appellant any chance to show actual prejudice. Such a procedure is required, upon the request of either party, under the ABA Standards Relating to Fair Trial and Free Press § 3.5(f):

"If it is determined that material disseminated during the trial raises serious questions of possible prejudice, the court on its own motion or shall on motion of either party question each juror, out of the presence of the others, about his exposure to that material...."

466 Pa. 245, at 266–67, 352 A.2d 40, at 51.

These cases illustrate that a jury may be contaminated by exposure to inadmissible, prejudicial information in a variety of ways. The possibility of such exposure may not necessarily require withdrawal of a juror or granting of a new trial, because prompt investigation by the trial court may reveal that the jury members were not, in fact, exposed or influenced. The court may also take measures designed to cure the possible prejudicial effects of such exposure. When such exposure is brought to the court's attention, however, and the lower court takes no steps to learn whether and to what extent the jury may have been influenced thereby, this Court must not be quick to dismiss the matter or to speculate as to what inferences or impressions the jury *may* have formed.

In the instant case, the trial court made no attempts to determine whether any jurors were actually cognizant of

the inflammatory label on the evidence box, nor did the court issue any precautionary instructions pertaining thereto. Instead, the court indicated "I can't read it from you holding it up from the bench, and *I don't know whether anybody else can.*" See at 285–286, n. 3. If the trial court did not "know whether anybody" on the jury could have read "Police shooting—homicide of police officer" on the evidence box, then *it was the court's obligation to find out* by polling the jurors.[1] In the interests of due process and fundamental fairness, I would therefore hold that the lower court committed prejudicial error in failing to poll the jury or take such measures as may have been appropriate in order to determine the impact, if any, of the prosecutor's "blatant and inexcusable inattention" so "strongly condemned" by the majority. At 286.

1. Defense counsel moved for a mistrial, which was denied, and did not specifically request the court to poll the jury. While the failure to make such request might present waiver problems in a non-capital case, the fact that this is a death penalty case with its irrevocable punishment warrants relaxation of our waiver rules. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 50 n. 19, 454 A.2d 937, 955 n. 19 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).