483 A.2d 1345

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Willie CLAYTON, Appellant.**

Supreme Court of Pennsylvania.

Argued April 9, 1984.

Decided Nov. 20, 1984.

26

Samuel C. Stretton, West Chester, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Philadelphia, Marion E. MacIntyre, Deputy Atty. Gen., Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

ZAPPALA, Justice.

This direct appeal arises from the March, 1982 jury trial of Appellant Willie Clayton for the shooting death and

robbery of Earl Grice on May 26, 1980. Appellant was found guilty of murder of the first degree, robbery, and possession of an instrument of crime. The sentence of death was imposed by the jury on the murder charge. Consecutive sentences of imprisonment of ten to twenty years on the robbery charge and of two-and-one-half to five years on the weapon offense were imposed.

During pre-trial motions before the trial judge, Appellant's counsel requested that the charges be dismissed, claiming that the filing of the charges on September 17, 1981 was an unreasonable delay which prejudiced the Appellant in his defense and deprived him of due process of law. The motion was denied. [N.T. 311].

Extensive testimony was offered by the Commonwealth related to the police investigation which was conducted after the Grice murder. The testimony detailed the attempts made by the police to locate the Appellant who at first was known only as "Saleem". In December, 1980, the Appellant was arrested on fugitive charges in New York. He was finally returned to custody in Philadelphia in March, 1981 after resisting extradition. The Appellant was arrested and charged with the murder of Terrence Dougherty. While incarcerated and awaiting trial for the Dougherty murder, Appellant was charged with the Grice homicide.

Early in September, 1981, the police had questioned Roy Young. In this initial interview, Young revealed that the Appellant had discussed the Grice murder with him while they were imprisoned and had admitted killing Grice. There were no witnesses to the incident itself, but the police reinterviewed individuals who were present in the Quill and Scroll Bar on that day. The bar, which Grice had owned, was located beneath his apartment where the body was found. The investigators found the witnesses to be more cooperative in the subsequent interviews, which they attributed to the fact that the Appellant was in custody. Shortly thereafter, the Appellant was charged. The detectives testified that, prior to Young's statement, they felt that there was insufficient evidence to charge the Appellant with the

Grice murder because there was no direct evidence to connect him with the crime.

◼ Appellant argues in this appeal that he was prejudiced by the delay because the passage of time prevented him from recalling the events and hampered his ability to locate potential witnesses. The record discloses, however, that the Appellant's motion to dismiss was based solely upon the passage of time itself. This contention was specifically rejected in *Commonwealth v. Daniels*, 480 Pa. 340, 390 A.2d 172 (1978), wherein we held that the passage of time, without more, is insufficient to sustain a claim of deprivation of due process.

◼ Appellant's assertions related to the effect of the delay on his memory and ability to locate witnesses are raised for the first time and will not be addressed. Although Appellant refers to the record to support his claim that a potential witness, Michael Buck, could not be located due to the delay, the record discloses that Appellant did not raise this as a basis for his due process argument. [N.T. 477–480]. Appellant's counsel requested that the prosecutor provide information of Buck's whereabouts because there were insufficient funds to hire an investigator to locate him. Counsel indicated that he was unsure whether Buck would be called as a defense witness. It is readily apparent that Buck was not a material witness who was lost to the defense due to the delay in filing the charges, as Appellant now claims. We find that the trial judge properly denied the motion to dismiss.

The Appellant claims that the trial court erred in failing to exclude evidence of two subsequent crimes which the Commonwealth presented to establish a common scheme, plan, or design. The Commonwealth was permitted to introduce evidence related to the shooting death of Terrence Dougherty on August 26, 1980, and the attempted murder of Thomas Felder on September 14, 1980 for this purpose. The trial judge concluded that the testimony was admissible

and that its probative value outweighed the potential prejudicial effect. [N.T. 464–473].

Unrelated criminal conduct of a defendant generally is inadmissible to prove the commission of the crime for which he is being tried. *Commonwealth v. Styles*, 494 Pa. 524, 431 A.2d 978 (1981). As we stated, however, in *Commonwealth v. Rose*, 483 Pa. 382, 399–400, 396 A.2d 1221, 1230 (1979),

"... evidence of other crimes is admissible when it tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. [Citation omitted.] When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value. [Footnote omitted.] [Emphasis added.]", quoting *Commonwealth v. Peterson*, 453 Pa. 187, 197–8, 307 A.2d 264, 269 (1973).

We must determine, therefore, whether the evidence was properly admitted to establish identity or a common plan, scheme or design.

Evidence was introduced to establish that the Appellant knew each of the victims, that the crimes occurred within a limited geographical area, that Grice and Dougherty were drug dealers, and that Felder had been involved with drugs in the past.

Earl Grice's body was found on the couch in his living room. The apparent motive behind the crime was robbery. Witnesses who had seen Grice earlier testified that he had a large wad of bills in his pants' pocket. When his body was discovered, however, his pockets were ripped from his pants and emptied. An empty cash box was found open in the

bedroom, and receipts had been thrown on the floor. The evidence established that his death resulted from a hard contact gun shot wound in the back of his head. Dr. Halbert Fillinger, the forensic pathologist who conducted the post-mortem examination, testified that a hard contact gunshot wound occurs when the front portion of the gun is touching the skin. [N.T. 1380]. A .38 caliber projectile was removed from Grice's head during an autopsy. The projectile was markedly distorted, however, so that no distinguishing markings could be identified. A pillow which had been used to muzzle the sound of the gunfire was found in the apartment. Although a search of the apartment revealed a fully loaded .38 caliber handgun and a pengun, the testimony of ballistics experts indicated that the fatal shot had not been fired from those weapons. The gun which was used to shoot Grice was never recovered.

The Commonwealth introduced testimony related to the circumstances surrounding the murder of Terrence Dougherty on August 26, 1980. Wendell Lewis discovered the body and informed the police of the death. He testified that he entered Dougherty's apartment and saw the body laying in a pool of blood. He recognized the body, but did not see the victim's face because a pillow was placed over the head. [N.T. 1606–1609]. Dr. Robert Catherman, the pathologist who performed the autopsy, conducted an on-scene examination at Dougherty's apartment on that date. [N.T. 1407]. Catherman observed the body lying face down in a prone position in the bedroom of the apartment. He noted a hard contact gunshot wound to the left side of the victim's head. The projectile, which was subsequently recovered from the body, was a base-jacketed .38 caliber bullet. [N.T. 1410, 1415]. As in the Grice murder, there were no eyewitnesses.

The substance of Thomas Felder's testimony was that Appellant and an unidentified man came to his apartment on September 14, 1980, ostensibly to purchase cocaine. Felder testified that he was not selling drugs at that time, but offered to make a telephone call for the Appellant to

buy cocaine. They left the apartment to go to a phone booth. After the call was made, Appellant accompanied Felder back to his apartment on the pretense of having left something there. Appellant later came out of the bathroom carrying a .38 caliber handgun, grabbed him and forced him to lie on his bed. Appellant took money from Felder's pants' pocket and removed a gold chain from his neck. The two men bound his hands and feet and a pillow was placed over his head. The Appellant put the pillow to the gun and fired, but the gun did not go off. Another shot was fired into his back which knocked him off of the bed. When the Appellant touched his stomach, Felder pretended that he was no longer breathing and waited for Appellant to leave. [N.T. 1712–1722]. The bullet which was surgically removed from Felder's body was also a .38 caliber.

Ballistics tests which were performed at the time of the trial disclosed that the bullets involved in the Dougherty murder and in the attempted murder of Felder were fired from the same gun. Due to the distorted condition of the bullet which was recovered from Grice's body, no comparison could be made to the Dougherty and Felder bullets.

As previously noted, the Appellant was charged with the Dougherty murder. He was tried and acquitted prior to this trial. Felder had appeared as a Commonwealth witness in the Dougherty trial, but did not testify about the incident on September 14, 1980. As a result, no evidence was introduced to connect the bullets from the two crimes.

Relying upon *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Appellant asserts the admission of the evidence of the Dougherty murder violated the double jeopardy clause and the concept of collateral estoppel. In *Ashe*, the U.S. Supreme Court held that collateral estoppel is embodied in the Fifth Amendment's guarantee against double jeopardy, but did not resolve the issue of whether the Fifth Amendment precludes the use of crimes of which a defendant has been acquitted in a prosecution for an unrelated offense for the limited purpose for which the Commonwealth introduced the evidence in this case.

We need not address the issue raised by Appellant, however, as the testimony related to the Dougherty murder does not fall within the exception which permits evidence of other crimes to be admitted in order to prove common scheme, plan or design or to establish identity.

■ To introduce evidence of other crimes, the Commonwealth would have had to demonstrate first that the Dougherty and Grice murders were so related that proof of the one would tend to prove the other or to show that the Appellant was the person who committed the other. The record discloses that the Commonwealth could not establish Appellant's connection to the Dougherty murder without the evidence of the attempted murder of Felder. The premises underlying the Commonwealth's theory are: (1) the same weapon was used in the Felder and Dougherty crimes and (2) Appellant used this weapon in the Felder crime. The conclusion which may logically flow from these premises and the demonstrated similarities of the crimes is that it was the Appellant who used the weapon in the Dougherty crime. Although the evidence would be legally relevant to connect the Felder and Dougherty crimes, the Commonwealth's conclusion that the Dougherty crime may then be introduced to establish the Appellant's connection to the Grice crime is unwarranted.

We are not confronted with evidence of separate crimes which could be connected to the Appellant. *See, e.g., Commonwealth v. Rose, supra.* Without the Felder testimony, the Appellant could not be connected with the Dougherty crime. Yet the Commonwealth attempts to support its position that the evidence was admissible within the common plan or identity exceptions to show that the Appellant committed each of the crimes based upon this attenuated connection. Under the circumstances of this case, we cannot permit a deduction that the Felder and Dougherty crimes were committed by the same actor to form the basis from which the jury may infer that the Dougherty and

Grice crimes were committed by the Appellant. As the evidence was improperly admitted, a new trial is required.

█ We will address the Appellant's assertion that the trial court erred in permitting testimony of the Felder crime because of the probability that the issue will resurface during the new trial. The circumstances of the Felder shooting, including, *inter alia*, the geographical area in which the crimes occurred, the motive, method and execution of the crime, were strikingly similar to the Grice murder. The fact that the Felder shooting occurred subsequently does not preclude introduction of the testimony. *See, e.g. Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955). Nor does the time span of four months between the two incidents render this evidence inadmissible in view of the numerous similarities between the incidents. In *Commonwealth v. Shively*, 492 Pa. 411, 424 A.2d 1257 (1981), we stated,

> [w]e have held that even if evidence of prior criminal activity is admissible under *Commonwealth v. Fortune* [464 Pa. 367, 346 A.2d 783 (1975)], *supra*, said evidence will be rendered inadmissible if it is too remote. *Commonwealth v. Brown*, 482 Pa. 130, 393 A.2d 414 (1978). Remoteness, in our view, is but another factor to be considered in determining if the prior crime tends to show that the same person committed both crimes. The degree of similarity between the two incidents necessary to prove common identity of the perpetrator is thus inversely proportional to the time span between the two crimes.

Upon a review of the record, we must conclude that the evidence was properly admitted to establish Appellant's common plan or identity.

Appellant has also raised the following assertions of error: (1) the presence of uniformed police officers at the prosecuting attorney's table denied him of his right to due process, and (2) the trial court erred in restricting the cross-examination of the decedent's sister. An examination

of the record discloses that those assertions of error have no merit. We need not address the remaining issues which have been raised by the Appellant in light of our disposition of the issue of the admissibility of evidence involving the Grice murder.[1]

Accordingly, the judgment of sentence is vacated, and the case is remanded for a new trial consistent with this opinion.

FLAHERTY, J., filed a concurring opinion in which NIX, C.J., and PAPADAKOS, J., joined.

LARSEN, J., concurred in the result.

FLAHERTY, Justice, concurring.

I concur in the result reached by the majority, but I must respectfully disagree with the analysis employed in the discussion of the propriety of introduction of evidence connecting appellant to Dougherty's murder in the instant case. Quite simply, appellant was acquitted of that offense. Appellant's acquittal of the Dougherty murder precludes the existence of any evidence of his involvement in that crime, thus, there can be no evidence of appellant's involvement in Dougherty's murder admitted on *any* theory.

This CONCURRING OPINION joined by NIX, C.J., and PAPADAKOS, J.

1.  The Appellant has raised the issue of whether the presence of a box on the prosecutor's table marked with red lettering stating, "Willie Clayton—Murder, Robbery", was a denial of his right to a fair trial. The box contained the trial file in this matter. Although we decline to address the issue at this point, we will take this opportunity to note that the preferable practice is to avoid actions which have the potential to affect a verdict against the defendant on appeal where precautionary measures may be taken effortlessly. Our concern is engendered by the fact that this claim is not founded on an isolated incident. In *Commonwealth v. Beasley*, 505 Pa. 279, 479 A.2d 460 (1984), we condemned similar needless conduct by a prosecutor and now reiterate the concerns expressed therein.