COMMONWEALTH of Pennsylvania,
Appellee,

v.

John Charles LESKO, Appellant.

Supreme Court of Pennsylvania.

Submitted Sept. 15, 1997.
Decided May 21, 1998.

Rabe F. Marsh, III, Greensburg, Paul G. Kay, Pittsburgh, for John Lesko.

John Peck, Greensburg, Robert A. Graci, Harrisburg, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

*OPINION OF THE COURT*

FLAHERTY, Chief Justice.

In 1981, the appellant, John Charles Lesko, was convicted of murder of the first degree and conspiracy and sentenced to death for the killing of a police officer, Leonard C. Miller. Appellate and post-conviction review of the conviction and sentence resulted in the exhaustion of state remedies and the denial of certiorari by the Supreme Court of the United States. See *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (Pa. 1983) (direct appeal), cert. denied, 467 U.S. 1256, 104 S.Ct. 3547 (1984); *Commonwealth v. Lesko,* 509 Pa. 67, 501 A.2d 200 (Pa.1985) (post-conviction review), reargument denied, 509 Pa. 625, 506 A.2d 897 (Pa.1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1328, 94 L.Ed.2d 179 (1987). In subsequent habeas corpus proceedings, the sentence of death was reversed by the United States Court of Appeals for the Third Circuit on the basis that improper prosecutorial comments made during the penalty phase of trial had tainted the jury's sentencing decision. *Lesko v. Lehman,* 925 F.2d 1527 (3d Cir.1991), cert. denied, 502 U.S. 898, 112 S.Ct. 273, 116 L.Ed.2d 226 (1991). The case was remanded to federal district court to resolve an evidentiary issue relevant to resentencing. *Id.* In 1995, a resentencing proceeding was held in the Court of Common Pleas of Westmoreland County. Appellant was again sentenced to death.[1] The present appeal ensued.

Appellant's first contention is that, in 1991, when his initial sentence of death was

---

**1.** Appellant's conviction was amply supported by the evidence, as recounted in *Commonwealth v.* *Travaglia,* supra.

reversed, a remand for imposition of a sentence of life imprisonment should have followed. Under the sentencing statute that was previously in effect, a remand for imposition of a sentence of life imprisonment would indeed have been required. *Commonwealth v. Wharton*, 542 Pa. 83, 665 A.2d 458, 460 (Pa.1995), cert. denied, 517 U.S. 1247, 116 S.Ct. 2504 (1996); *Commonwealth v. Young*, 536 Pa. 57, 637 A.2d 1313, 1316 (Pa.1993). However, the statute was amended in 1988 to provide that a new sentencing hearing must be conducted whenever a sentence of death is vacated, except where it is vacated for disproportionality or lack of evidence of aggravating factors. 42 Pa.C.S. § 9711(h)(4). Appellant argues that his due process and ex post facto rights under the federal and state constitutions were violated by subjecting him to resentencing under the amended statute. The same arguments have already been rejected by this court. We have repeatedly held that the revised sentencing provision can be applied to cases, like appellant's, that were pending in the appellate process at the time of the amendment. *Commonwealth v. Wharton*, 665 A.2d at 460; *Commonwealth v. Young*, 637 A.2d at 1316–18 (no violation of ex post facto clause). See also *Commonwealth v. Chambers*, 546 Pa. 370, 685 A.2d 96, 100–02 (Pa.1996) (no denial of due process), cert. denied, —— U.S. ——, 118 S.Ct. 90 (1997).

■ Appellant further asserts that the resentencing provision does not apply where a death sentence has been vacated by any court other than the Supreme Court of Pennsylvania. He relies on the following language in 42 Pa.C.S. § 9711(h)(4): "*If the Supreme Court determines that the death penalty must be vacated* for any other reason [i.e., reasons other than disproportionality or lack of evidence of aggravating circumstances], *it shall remand for a new sentencing hearing* pursuant to subsections (a) through (g)." Appellant reasons that because the statute does not specify what is to occur when courts other than this one vacate a sentence, the legislature must have intended that there would be no new sentencing hearing and that a remand for imposition of a life sentence would occur. Such an approach would lead, however, to a highly irrational

sentencing scheme. Those whose sentences are vacated by this court would be in a far worse position than those whose sentences are vacated by other courts, since the former would be at risk of incurring another death sentence while the latter would not. The legislature cannot be deemed to have intended such an illogical result. See 1 Pa.C.S. § 1922(1) (presumption that the legislature did not intend a result that is absurd or unreasonable).

■ Further, appellant asserts that the resentencing provision is inapplicable to cases that were pending before any court other than the Supreme Court of Pennsylvania at the time of the 1988 amendment. Appellant notes that, because we completed appellate and post-conviction review of this matter in 1986, this case was not pending before us at the time of the 1988 amendment. The statute contains no language, however, that makes it applicable only to cases pending in a particular court. In fact, the legislature expressly designated that the amendment should be applied to "*all* criminal cases and appeals *pending* on the effective date of this act." Act of 1988, Dec. 21, P.L. 1862, No. 179, § 3 (emphasis added). This plainly sets no limits as to the courts in which cases and appeals were pending.

■ Appellant next contends that it was error to allow the Commonwealth to introduce evidence of two other murder convictions as aggravating circumstances for the present murder, inasmuch as evidence of the other convictions was not introduced at the original sentencing proceeding. We do not agree. The other murders, namely those in which Peter Levato and Marlene Sue Newcomer were victims, were committed prior to appellant's trial in this case. No trials in the other cases had yet taken place. Hence, the convictions were simply not available for use at appellant's original sentencing hearing. Regardless, it is well established that the Commonwealth may introduce new aggravating factors in the penalty phase of a second capital murder trial without providing an excuse for not having presented those factors in the first trial. *Commonwealth v. Zook*, 532 Pa. 79, 615 A.2d 1, 19–21 (Pa.1992),

cert.denied, 507 U.S. 974, 113 S.Ct. 1420, 122 L.Ed.2d 789 (1993).

■ Appellant also asserts that allowing admission of the other convictions serves to reward the Commonwealth for prior misconduct in that there would have been no second penalty hearing and therefore no use of the other convictions if the Commonwealth had not made improper remarks at the previous hearing. In reversing appellant's sentence of death, the United States Court of Appeals for the Third Circuit held that certain remarks by the Commonwealth at the penalty hearing had tainted the sentencing determination. However, there was absolutely no indication that the remarks were viewed as being so intentional and egregious as to constitute misconduct. *Lesko*, 925 F.2d at 1540–46. See generally *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321, 325 (Pa.1992) (intentional prosecutorial misconduct). In fact, it was only when the remarks were considered cumulatively that habeas corpus relief was deemed warranted at all. *Id.* at 1541, 1546. Appellant's assertion is without merit.

It is next alleged that the trial court erred in dismissing a juror for cause. The juror, Arlene Selepic, asked the following question while she was undergoing voir dire by the Commonwealth regarding her ability to render a verdict of death: "In the State of Pennsylvania if a person is granted or is sentenced to life in prison, is that with the proviso there is no parole possible?" Defense counsel nodded his head in the affirmative and proclaimed, "The judge will charge the jury that life imprisonment in Pennsylvania is without parole." The Commonwealth immediately challenged the accuracy of this remark. The court responded by telling Selepic that life imprisonment "has no requirement of parole," and added that the matter could not be explained any further at that time.

■ A challenge for cause was made by the Commonwealth. The court sustained the challenge on the basis that the information

conveyed to Selepic by defense counsel was information that other jurors might or might not receive during the sentencing hearing. The court noted that the question of whether, and under what circumstances, jurors should be instructed that a life sentence means life without parole had not yet been resolved by Pennsylvania courts.[2] A trial court's decision to discharge a juror will not be reversed absent a palpable abuse of discretion. *Commonwealth v. Jacobs*, 536 Pa. 402, 639 A.2d 786, 790 (Pa.1994). No such abuse is evident here, inasmuch as the court's action was a mere precaution designed to assure that the jury would not be tainted by the information that defense counsel conveyed.

Appellant's next contention is that the Commonwealth, during cross-examination and closing argument, improperly commented on his fifth amendment privilege. At the resentencing hearing appellant testified that, around the time of the Levato, Newcomer, and Miller murders, he was taking drugs and abusing alcohol. He also testified that he was upset and traumatized by sexual molestation that he and his brother experienced during their childhood years. During the original sentencing hearing appellant testified regarding various aspects of his past, but he did not mention any drug or alcohol abuse. Nor did he mention any molestation. Similarly, confessions that he gave to the police contained no references to such matters.

At the resentencing hearing, appellant was cross-examined by the Commonwealth regarding his failure to have ever previously mentioned drug and alcohol abuse and sexual molestation. Appellant conceded that he had an opportunity to include such details in his confessions, but that he did not do so. He also admitted that he did not mention these matters in testimony that he gave at his original sentencing hearing. Consequently, the Commonwealth made the following comments during its closing argument:

And isn't it interesting, ladies and gentlemen, in 1981 when John Lesko testified

---

**2.** Appellant's resentencing hearing preceded our decision in *Commonwealth v. Christy*, 540 Pa. 192, 656 A.2d 877, 888–89 (Pa.1995), cert. denied, 516 U.S. 872, 116 S.Ct. 194, 133 L.Ed.2d 130 (1995), wherein we addressed the matter of providing jury instructions regarding the meaning of a "life sentence."

before another jury, he didn't tell them that he was under the influence of drugs and alcohol. Don't you think that would be important when you committed these homicides, Peter Levato, Marlene Sue Newcomer and Officer Miller, to tell the jury that I was drunk, that I had drugs and didn't know what I was doing, don't you think that would be something you would remember? ... After 15 years, he's remembered that detail. He remembers all of his drug abuse and alcohol abuse started early, continued, only got worse, but in 1981, he didn't mention a word to the jury about that, a word.

. . . .

Remember too when he testified in 1981, there's no rage, there's no hostility about the molestation of his brother. . . . That was important to him. Why didn't he mention it?

■ Appellant's contention that the Commonwealth's cross-examination and closing argument amounted to an impermissible comment on his right to remain silent is without basis. Appellant's testimony regarding drug and alcohol abuse and sexual molestation was directed at establishing mitigating circumstances for sentencing. See 42 Pa. C.S. § 9711(e) (mitigating circumstances). The cross-examination and closing remarks of the Commonwealth simply tested the veracity of the mitigating testimony that appellant presented. As the Third Circuit Court of Appeals noted when it reversed appellant's original sentence of death,

> Lesko provided testimony of a biographical nature at the penalty phase of his trial. Clearly, then, he could not claim a fifth amendment privilege against cross-examination or prosecutorial comment on matters reasonably related to his credibility or the subject matter of his testimony. See *Harrison v. United States*, 392 U.S. 219, 222, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047 (1968) ("A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives . . .").

925 F.2d at 1542. Unlike the original sentencing proceeding where the Commonwealth was deemed to have improperly commented on appellant's failure to testify regarding the merits of the charges against him, see *Lesko*, 925 F.2d at 1544, the Commonwealth's cross-examination and closing argument at the resentencing hearing addressed only the credibility of the testimony that appellant provided. The Commonwealth was perfectly within its bounds to challenge the credibility of biographical testimony that appellant provided.

Appellant next argues that the following excerpt from the Commonwealth's closing argument constituted an impermissible appeal to vengeance:

> Remember all of the sympathy that he showed him, all the mercy that he showed him. When you think about Marlene Sue Newcomer, think about her handcuffed in the back seat of her car with a blanket over her, being shot at and then being killed and remember all of the mercy and all the sympathy that John Lesko showed her. On January 1, 1980, and the climax of these eight days, remember Officer Miller being goaded, literally goaded into chasing Travaglia and when he comes up to him, being killed and being urged by John Lesko to hit him again. Remember his prideful remarks that night, I wanted to kill him. Remember all of the mercy and all the sympathy that John Lesko showed Officer Leonard Clifford Miller on January 3, 1980.

■ In fact, appellant claims that this was essentially identical to the appeal for vengeance that was made during his original sentencing hearing. We do not agree. At the original hearing, the prosecutor argued that the death penalty should be imposed to fulfill the jury's "duty" to even the "score," which stood at "John Lesko and Michael Travaglia two, Society nothing." *Lesko*, 925 F.2d at 1545–46. See generally *Commonwealth v. Johnson*, 542 Pa. 384, 668 A.2d 97, 107–08 (Pa.1995) (prosecutorial remarks at penalty hearing must not "arouse the jury's emotions to such an extent that it is impossible for the jury to impose a sentence based on relevant evidence"), cert. denied, —— U.S. ——, 117 S.Ct. 90 (1996). The comments at the resentencing proceeding were of a different sort. They focused on details of the

crimes, and encouraged the jury to pay particular attention to the callous manner in which appellant acted. This did not invite a retaliatory sentencing decision; rather, it invited a decision that took into account all of the relevant facts—including those which shed light on appellant's cold-hearted and unmerciful character. Consideration of evidence relating to character is properly at the core of the sentencing decision. *Commonwealth v. Beasley*, 505 Pa. 279, 479 A.2d 460, 465 (Pa.1984). The remarks in question would not have impeded the jury in rendering a verdict based on the evidence.

■ Appellant next argues that by again being sentenced to death, after having been imprisoned on death row for sixteen years, he is being subjected to cruel and unusual punishment in violation of the eighth amendment to the United States Constitution and article I, § 13 of the Pennsylvania Constitution. Appellant describes death row as a hostile and hopeless environment where there are "shouts of the ugliest profanities" and where "basic concentration is next to impossible." Further, he reports that death row houses some of the Commonwealth's most violent offenders, and that many of these people do not conduct themselves in a manner that he finds tolerable; for example, they refuse to take showers and they utter "unintelligible shrieks." We are not persuaded that, by being housed with people like himself who have committed crimes so reprehensible to society as to warrant imposition of the death penalty, appellant has been subjected to an unconstitutional punishment. It has been repeatedly held that the death penalty does not constitute cruel and unusual punishment. E.g., *Commonwealth v. Hardcastle*, 519 Pa. 236, 546 A.2d 1101, 1111 (Pa. 1988), cert. denied, 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). This conclusion is not altered by the fact that, prior to being executed, one ordinarily spends substantial time in incarceration while appeals challenging one's sentence are adjudicated.

■ Appellant's next claim is that the trial court erred in excluding certain mitigating testimony at the penalty hearing. It is well established that a defendant is to be accorded wide latitude in demonstrating miti-

gating circumstances. See *Commonwealth v. Travaglia*, 467 A.2d at 300. The testimony that appellant sought to introduce was, however, properly excluded. It was, quite simply, not relevant to proof of mitigating circumstances.

■ Specifically, the court did not permit a social worker, Lois Nardone, to testify regarding tangential aspects of appellant's family background that were not known to appellant before he committed the crime. Nardone provided extensive testimony about various aspects of appellant's family history. But when she attempted to testify regarding the marital relationship of appellant's grandmother, including extraneous details such as whether the grandmother slept alone or engaged in sex only on paydays, the testimony was excluded as irrelevant. Nardone was unable to provide any basis for belief that appellant would have been aware of such details. Matters of which appellant had no knowledge would certainly not have been mitigating factors in his criminal acts.

■ The court also excluded small portions of the testimony of Hamid Abdul, an Islamic chaplain who served as a religious mentor and counselor to appellant in prison. Abdul testified regarding the prison environment where appellant was incarcerated, and about appellant's personality, interests, and behavior. Abdul was not, however, permitted to state his personal opinion as to whether appellant is remorseful, though he was allowed to say that appellant's appearance is demonstrative of remorse. Further, Abdul was not permitted to explain his personal reasons for testifying in support of appellant. Nor was he allowed to state whether the death penalty is recognized in the Islamic tradition. In excluding this testimony, the trial court reasoned that Abdul's personal opinions and motivations, as well as the traditions of Islamic culture, were not relevant to the statutory mitigating circumstances. See 42 Pa.C.S. § 9711(e) (mitigating circumstances). We agree.

Next, appellant argues that it was error for the Commonwealth to introduce evidence of three aggravating circumstances at sentencing. Appellant's claim is that the prose-

cutor created three aggravating circumstances out of two prior murder convictions. The Commonwealth introduced evidence that appellant was convicted of two prior murders: that of Peter A. Levato and Marlene Sue Newcomer. It also introduced evidence that appellant was convicted of conspiracy to commit murder in the first degree in each case (Levato, Newcomer and Miller). Finally, it introduced evidence that Officer Leonard Miller was killed in the performance of his duties.

Appellant's argument is that using each murder conviction as a separate aggravating circumstance and also using those convictions to show felony convictions involving the use or threat of violence to the person allows the Commonwealth an impermissible double usage of the evidence.

42 Pa.C.S. § 9711(d)(10) provides:

**(d) Aggravating circumstances.** Aggravating circumstances shall be limited to the following.

(1) The victim was a ... peace officer ... who was killed in the performance of his duties or as a result of his official position.

. . . .

(9) The defendant has a significant history of felony convictions involving the use or threat of violence to the person.

(10) The defendant has been convicted of another Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable or the defendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense.

It is plain that the killing of Officer Miller in the performance of his duties was an aggravating circumstance under (d)(1). It is also plain that the convictions of conspiracy to commit murder were aggravating circumstances under (d)(9) in that they were a significant history of felony convictions involving the use of violence. Appellant complains, however, that the convictions for the murders of Peter Levato and Marlene Newcomer are but one aggravating circumstance

either under (d)(9) or under (d)(10), and that they may not be used also as separate aggravating circumstances.

■■■ The argument is meritless. Section (d)(10) allows the jury to consider as aggravating circumstances "another Federal or State offense ... for which a sentence of life imprisonment or death was imposable" as an aggravating circumstance, and (d)(9) allows the jury to consider as aggravating circumstances a significant history of felony convictions involving the use of violence. Nothing in the statute provides that a criminal conviction may be considered under only one subsection. Here, the murders of Levato and Newcomer fit under both d(9) and d(10), and were, therefore, properly considered by the jury as presenting aggravating circumstances under both d(9) and d(10).

■■■ Next, appellant claims that it was error to admit into evidence photographs of the crime scenes of all three murders, the two revolvers and bullets used in the slayings, the autopsy reports in the Levato and Newcomer cases, and statements made by appellant following the initial trial. The essence of appellant's claim is that this evidence is irrelevant, immaterial and unduly prejudicial.

We rejected a similar claim in *Commonwealth v. Young,* 637 A.2d at 1320, where we stated:

*Beasley* makes it clear that a sentencing court does not err when it refuses to limit evidence of this particular aggravating circumstance [prior convictions] to a certified record and sanitized summary of the circumstances of the prior crimes. The jury is entitled to know more than the mere fact of conviction.

In *Beasley* we stated:

In this Commonwealth, sentencing has long been regarded as having at its core a function of character analysis ... and the central idea of the present sentencing statute is to allow a jury to take into account such relevant information, bearing upon a defendant's character and record, as is applicable to the task of considering the enumerated aggravating circumstances.... The nature of an offense, as ascertained

through examination of the circumstances concomitant to its commission, has much bearing upon the character of a defendant, and, indeed, without reference to those facts and circumstances, consideration of "convictions" would be a hollow process, yielding far less information about a defendant's character than is relevant.

479 A.2d at 465. Bearing in mind that the Commonwealth has the burden of proving the existence of aggravating circumstances, one of which was that appellant had a significant history of felony convictions involving the use of violence, evidence of the revolvers, bullets, a photograph of the crime scene and autopsy reports were relevant to the jury's understanding of the nature of the offenses. With respect to photographs, the only photograph admitted over defense objection was a black and white photograph of the crime scene in the Miller homicide. It showed the officer's body lying in the road under a blanket. This photograph served to familiarize the jury with the facts and circumstances of the crime and was not unduly prejudicial. Similarly, the guns, bullets and autopsy reports were also relevant to the jury's understanding of the nature of the offenses for they concern the nature of the prior crimes and the character of the person who committed them. Since there has been no showing of undue prejudice, this evidence was a relevant and proper factor in the jury's consideration of the sentence which should be imposed.

█ Similarly, appellant's claim of error with respect to cross-examination concerning his statement that he had a better chance of being hit by a car than getting the electric chair, and that he would be out of jail in ten years, is without merit. At the sentencing hearing, appellant claimed that he was remorseful. Cross-examination concerning this statement was proper in light of the claim of remorse. There was no error in admission of any of the complained of evidence.

Next, appellant argues that it was error to admit the facts of the Nichols homicide in the sentencing proceeding. In a habeas corpus proceeding filed by appellant, a United States district court conducted a hearing concerning the voluntariness of appellant's guilty plea in the Nichols matter. The district court ruled that appellant's guilty plea was wrongfully induced by the representation that it would not be introduced during the penalty phase of the Westmoreland County case involving the murder of Officer Miller. Since the Nichols guilty plea was introduced in the Miller case, the district court determined that a second penalty proceeding was to be conducted in the Miller case and that evidence of the guilty plea in the Nichols matter was not to be introduced in the second Miller penalty trial. *Lesko v. Lehman,* Civil Action No. 86–1238, U.S. Dist. Lexis 1123, 1992 WL 717815 (W.D.Pa.1992). At the second penalty hearing, over defense objection, the Commonwealth introduced evidence of the Nichols conviction and the circumstances of the Nichols murder, but not the guilty plea. The evidence which was introduced was not considered as an aggravating factor in sentencing; instead, it was used to demonstrate appellant's motive and intent in killing Officer Miller. As Judge Scirica stated in the first Third Circuit appeal: [3]

3. There were two appeals to the Third Circuit involving Lesko's habeas corpus petition. In the first appeal, *Lesko v. Owens,* 881 F.2d 44 (3d Cir.1989), the Third Circuit reversed the district court's issuance of the writ, holding that Lesko was not deprived of a fair trial by the introduction of evidence of his role in the prior murder of William Nichols. However, the court remanded the case to the district court to consider the remaining claims in Lesko's habeas corpus petition.

On remand the district court dismissed Lesko's petition after considering the remaining claims, but without an evidentiary hearing. On appeal, *Lesko v. Lehman,* 925 F.2d 1527 (3d Cir. 1991)(the second appeal), the Third Circuit again

reversed the district court, holding that the district court erred in failing to hold an evidentiary hearing on the claim that introduction of evidence of his guilty plea to the Nichols murder at the penalty phase of the Miller trial violated his due process rights and that the jury's sentencing was tainted by improper prosecutorial remarks during the penalty phase of the trial. The Third Circuit ordered the district court to conduct an evidentiary hearing on the issue of the voluntariness of Lesko's Indiana County guilty plea (the Nichols murder) and to issue a writ of habeas corpus subject to the holding of a Pennsylvania resentencing proceeding. If the district court concluded as a result of its evidentiary hearing that the Nichols guilty plea was not voluntary,

At trial, Lesko and Travaglia's sole defense to the charge of first degree murder was that they each lacked the requisite intent to kill. Lesko's counsel argued principally that his client was at most guilty of felony-murder. He argued that in instigating the police chase, defendants planned first to divert the officer from the Stop–and–Go store, and later return to rob the establishment. Therefore, Lesko's lawyer urged, the killing was not pre-meditated, but was the unintended result of a botched robbery attempt.

. . . .

[T]he central issue in the Commonwealth's case against Lesko was whether he deliberately supported Travaglia in a premeditated killing of Miller or whether he was guilty only of participating in an abortive attempt at robbery. Members of the jury could not have determined what was in Lesko's mind based solely on the events immediately preceding Miller's death. The jury could only have fairly evaluated the Commonwealth's theory regarding Lesko's state of mind by hearing evidence tending to show that Travaglia and Lesko had jointly embarked that evening on a crime spree, that they had already committed a homicide likely to command the death penalty, that they had in their possession powerful evidence of their guilt of that homicide. Moreover, to be in a position to evaluate Lesko's state of mind during the critical moments during the Miller encounter, the jury needed to hear sufficient details about these matters to be able to appreciate the nature of the evening's joint undertaking, the relationship and mood of the participants, and the extent of the criminal exposure of those participants in the event of their apprehension by Miller.

*Lesko v. Owens,* 881 F.2d 44, 47, 54 (3d Cir.1989) (footnote omitted).

The issue, thus, is whether it was error to introduce evidence of the Nichols killing in order to prove appellant's motive and intent in killing Officer Miller when the district court had ruled that the guilty plea in the Nichols case was not to be introduced in the second penalty trial.

■■■ The trial court charged the jury as follows:

You have heard evidence concerning the killing of William Nichols in Indiana County. This evidence may be considered only as evidence tending to show the motive for and the circumstances surrounding the killing of Officer Leonard Miller. This event is not to be considered by you as an aggravating circumstance upon which you might base a sentence of death. That is, that the killing of William Nichols is not to be considered as an aggravating circumstance, not as a conviction to determine if Mr. Lesko has a significant history of felony convictions involving the use or threat of violence toward a person or persons, nor as a conviction of any state offense committed either before or at the time of the offense at issue for which a sentence of life imprisonment or death was imposable. I want it to be clear to you that you are not to use the evidence of the Nichols killing to determine any of the aggravating circumstances described to you.

As we have already stated, the circumstances surrounding the killing are admissible for the jury to consider in imposing sentence. *Commonwealth v. Young,* supra. Because the jury was clearly instructed that the Nichols matter was introduced into evidence only for the purpose of showing the motive and circumstances surrounding the killing of Officer Miller, it was not error to admit evidence of the Nichols evidence for the narrow purpose which was instructed.

Next appellant asserts that he was denied due process and equal protection of the law because he was not granted the same proportion of challenges to alternate jurors as he was to jurors. Pa.R.Crim.P. 1126 provides that in capital felony trials involving one defendant, the Commonwealth and the defendant each has twenty peremptory challenges. That is a ratio of 10 challenges to every 6 jurors. However, in selecting alternate jurors, Pa.R.Crim.P. 1108 provides that each party is entitled to one peremptory challenge

then evidence of the guilty plea was not to be    introduced at the resentencing proceeding.

for each two alternate jurors. Thus, the ratio for alternate jurors in this case was 3 challenges to every 6 jurors.

■■■ The claim is without merit. First, since both parties are afforded the same number of challenges, there can be no equal protection violation. Second, appellant has articulated no injury from the application of the rules. The fact that an alternate juror became a juror is not, in itself, an injury. Third, rules 1126 and 1108 provide an even-handed and reasonable process for the selection of jurors. Fourth, appellant offers no authority for the proposition that due process is violated merely by providing for a different number of peremptory challenges for jurors and alternate jurors. And finally, as this court stated in *Commonwealth v. Morales*, "There is no constitutional right to any peremptory challenges, let alone any particular number of challenges." 494 A.2d 367, 373 n. 5 (Pa.1985).

■■■ Finally, appellant asserts that his second penalty trial was barred by the double jeopardy clauses of the United States and the Pennsylvania constitutions. In *Commonwealth v. Smith*, supra, this court held that the double jeopardy clause of the Pennsylvania Constitution bars reprosecution "not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." 615 A.2d at 325. In *Smith* the prosecution withheld evidence that one of its witnesses was promised lenient treatment in exchange for his testimony and it intentionally withheld material exculpatory evidence.

No court which has reviewed this case has determined that the prosecutor's conduct intentionally and impermissibly prejudiced the appellant. The Third Circuit Court of Appeals in *Lesko v. Lehman*, supra, after a careful review of the Commonwealth's conduct in this case, concluded that the prosecutor had impermissibly referred to appellant's silence and had impermissibly appealed to vengeance in his closing remarks. The United States District Court subsequently determined that the Commonwealth reneged on the plea bargain between appellant and the county prosecutor. Although these errors required a reversal of the imposition of the death penalty, neither the Third Circuit Court of Appeals nor any other court has determined that the prosecutor's conduct was an intentional attempt to impermissibly prejudice appellant. It was, instead, erroneous. Accordingly, this claim is without merit, for the prosecutorial misconduct in this case does not rise to the level of intentional misconduct and double jeopardy is not, therefore, implicated.

Finally, after a thorough review of the record we conclude that the record supports the aggravating circumstances as found by the jury. Additionally, we have conducted a proportionality review as is required by 42 Pa.C.S. § 9711(h)(3)(iii) and find the sentence to be proportionate to sentences imposed in similar cases. There is no basis to find that the sentence of death was the product of passion, prejudice or any other arbitrary factor. Accordingly, the death sentence imposed by the Court of Common Pleas of Westmoreland County is affirmed.[4]

NIGRO, J., concurred in the result.

---

4. The prothonotary of the Supreme Court is directed to transmit the complete record in this case to the Governor, 42 Pa.C.S. § 9711(i).