626 A.2d 163

COMMONWEALTH of Pennsylvania

v.

Dexter A. PERILLO, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 11, 1993.

Filed June 2, 1993.

William L. McLaughlin, Paoli, for appellant.

William R. Toal, III, Asst. Dist. Atty., Media, for appellee.

Before OLSZEWSKI, TAMILIA and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge:

This is an appeal from the order of the Court of Common Pleas of Delaware County denying appellant's motion to dismiss pursuant to 18 Pa.C.S.A. § 110 and the double jeopardy clause of the Fifth Amendment of the Constitution. We affirm.

Appellant and Ms. Janice Eddy were engaged to be married in 1990, but Ms. Eddy broke off the engagement in October of 1990. On January 4, 1991, appellant confronted his former fiance in her apartment complex parking lot and threatened to kill her and her nieces. Appellant was charged with terroristic threats and harassment on Docket Number 109–91. Pursuant to a negotiated plea agreement, appellant was placed on ARD probation on the 109–91 charges for two years with the condition that he have no contact with Ms. Eddy.

Seven months after the first altercation, on August 13, 1991, appellant allegedly accosted Ms. Eddy as she was leaving for work. According to Ms. Eddy, he blocked her exit from the apartment building; threw her against the mailboxes in the vestibule; followed her to her car; spit in her face; and threatened to rape her "by the end of the week." *See* Affidavit of Probable Cause and Notes of testimony, 08/29/91 at 6, 8, 13–19. These charges were filed at Docket Number 4186–91 and appellant was subsequently arraigned on the charges of Simple Assault,[1] Terroristic Threats,[2] Harassment,[3] Retaliation Against Witness or Victim,[4] and Violation of an Order[5].

At the removal hearing on the first set of charges, appellant pleaded *nolo contendere* to one count of terroristic threats on an open plea, and harassment was *non prossed*. Defense counsel informally requested the Commonwealth to join the later prosecution, but the Commonwealth would not agree. The trial court sentenced appellant to a period of probation, fine, and costs. Neither appellant nor the Commonwealth moved to consolidate before a plea was accepted.

The current prosecution on the second set of charges filed at Docket Number 4186–91 proceeded toward trial, and appellant raised a pretrial double jeopardy claim and a claim

1. 18 Pa.C.S.A. § 2701
2. 18 Pa.C.S.A. § 2706
3. 18 Pa.C.S.A. § 2709
4. 18 Pa.C.S.A. § 4953
5. 18 Pa.C.S.A. § 4955

pursuant to 18 Pa.C.S.A. § 110. The Honorable Frank T. Hazel denied the motion in an order dated January 23, 1991, and a *Commonwealth v. Bolden* appeal was taken to this court. This appeal followed. The matter is now before us for disposition.

Appellant raises numerous issues on appeal. However, the issues as phrased in appellant's brief are confusing. Hence, we have consolidated and summarized them as follows:

I.    Does 18 Pa.C.S.A. § 110 require the joinder of charges involving the same victim and appellant where separate incidents of criminal conduct occurred seven months apart and appellant entered a negotiated plea in the first incident but contested the charges in the second incident?

II.   Does the double jeopardy clause preclude the Commonwealth from prosecuting appellant where he previously entered a plea to terrorizing the same victim eight months prior to the incident in which he is presently charged and appellant alleges that the conduct and evidence from the prior case is required to establish his guilt on the current charges?

■   Appellant's first claim lacks merit. The relevant statute provides in pertinent part:

§ 110.    When prosecution barred by former prosecution for different offense

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an *acquittal or in a conviction* ... and the subsequent prosecution is for:

.    .    .    .    .

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the

6

jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense; ...

18 Pa.C.S.A. § 110 (emphasis added).

The parties in this case have assumed the applicability of § 110(1)(ii) and have focused their discussion primarily on the issue of whether the "subsequent prosecution" was for an offense which arose from the same criminal episode as that of the "former prosecution." However, the first step in our analysis must be to determine whether the charges filed to Docket Number 109–91 resulted in either an acquittal or a conviction pursuant to § 110(1). Section 110(1) provides the threshold requirement; and unless it is satisfied, § 110 is inapplicable regardless of the nature of the underlying criminal offenses. *Commonwealth v. Smith*, 391 Pa.Super. 154, 570 A.2d 559 (1990).

■ Pursuant to the negotiated plea agreement, appellant pleaded *nolo contendere* to one count of terroristic threats and the harassment charge was *non prossed.* A *non pros* is neither an acquittal nor a conviction; and as a result, neither § 110 nor the double jeopardy clause apply to the harassment charge. Since appellant was never subjected to the risk of conviction, there simply was no former prosecution to trigger the application of § 110 or the double jeopardy policies which underlie it. *See Smith, supra (non pros* of criminal charges is not an acquittal for the purposes of § 110).

■ However, a plea of *nolo contendere* is treated the same as a guilty plea in terms of its effect upon a particular case. *Commonwealth v. Catanch,* 398 Pa.Super. 466, 581 A.2d 226 (1990). In addition, a guilty plea constitutes a conviction for the purposes of precluding further prosecution pursuant to 18 Pa.C.S.A. § 110. *Commonwealth v. Caden,* 326 Pa.Super. 192, 473 A.2d 1047 (1984). As a result, we must address the § 110 issue as related to the terroristic threats charge only.

■ Section 110 of the Crimes Code requires the Commonwealth to consolidate in a single proceeding all known charges based on the same conduct or arising from the same criminal

episode unless the court orders separate trials. This rule of compulsory joinder is intended to protect the accused from governmental harassment and also, as a matter of judicial administration and economy, to ensure finality without unduly burdening the judicial process by repetitious litigation. *Commonwealth v. Starr*, 416 Pa.Super. 250, 610 A.2d 1066 (1992), *appeal granted*, 533 Pa. 633, 621 A.2d 580 (1993), *quoting Commonwealth v. Walton*, 405 Pa.Super. 281, 285, 592 A.2d 335, 337 (1991).

Whether the incidents are part of a single criminal episode depends on the facts of each case. The court must consider: (1) the temporal sequence of events; (2) the logical relationship between the acts; and (3) whether they share common issues of law and fact. Two separate offenses may constitute the same criminal episode if one offense is a necessary step toward the accomplishment of a given criminal objective or if additional offenses occur because of an attempt to secure the benefit of a previous offense or conceal its commission. *Id.*, 416 Pa.Super. at 256, 610 A.2d at 1068.

The terroristic threats and the later incident filed to Docket Number 4186 were not temporally close or contiguous. They occurred seven months apart and were not part of a continuing series of occurrences. *See, e.g., Commonwealth v. Flenory*, 351 Pa.Super. 27, 504 A.2d 1341 (1986) (bribery of a witness which occurred ten months after original criminal episode did not require a separate trial); *Commonwealth v. Purnell*, 358 Pa.Super. 105, 516 A.2d 1203 (1986) (charge of disorderly conduct and a subsequent assault which occurred within minutes following arrest constituted separate incidents). Although the temporal factor is important, it is not dispositive and we must analyze the other two factors.

We concede that there was some relationship between the terroristic threats and the second incident because the second incident was a retaliatory act by appellant upon the same victim. However, the similarity ends there. The first criminal episode occurred on January 4, 1991, when appellant accosted the victim in the parking lot. He was charged with

terroristic threats and harassment. The terroristic threats charge is the only charge that is relevant because it was the subject of the *nolo* plea.

The second criminal incident occurred seven months later. Appellant allegedly blocked Ms. Eddy's exit from the apartment building; threw her against mailboxes; followed her to her car; spit in her face; and threatened to rape her by the end of the week. These acts resulted in charges including assault, harassment, terroristic threats, retaliation against a witness, and violation of an order. Four of the crimes— assault, retaliation against a witness, harassment, and violation of an order—were completely different from the terroristic threats which were alleged in the initial complaint. They involve different legal and factual issues, and the relationship between the two crimes is remote.

Moreover, it is critical to recognize that neither of the parties moved to consolidate the charges before a plea was accepted on the charges filed to Docket Number 109–91. As the Commonwealth correctly points out, there is no concern here with repetitious trials or governmental harassment by successive litigation because there was a *consensual negotiated plea agreement* with respect to the first set of charges. The matter was resolved expeditiously, and appellant denied only the charges filed to Docket Number 4186–91.

Appellant's attempts to distinguish the *Flenory* case are unpersuasive. Indeed, we cannot agree with appellant's bold assertion that *Flenory* was "wrongly decided." In *Flenory* the defendant was charged with criminal homicide, aggravated assault and criminal conspiracy in connection with the death of one person and the injury of another. Before the trial, a criminal information was filed alleging that defendant had threatened and attempted to bribe the surviving victim, a prosecution witness. However, the later charges were not consolidated, and the defendant was tried on the original charges. The trial court dismissed the charges against the defendant stemming from the bribery incident pursuant to § 110 on the grounds that they arose from the same criminal

episode as the earlier charges for which defendant had already been tried.

However, this court reversed the lower court and held that the two incidents did not have the type of logical relationship that would bar the subsequent prosecution. Despite the fact that the bribery was undeniably tied to the original charges, the court held that "the relationship [was] too far removed from the initial offense." *Flenory*, 351 Pa.Super. at 31, 504 A.2d at 1343. The *Flenory* court also stated that the offenses were unrelated in kind—one was an assault on a person, the other a possessory offense and an obstruction of justice charge. Factually, they were separated by time and distance.

In this case as in *Flenory*, the second group of offenses was separated by time and distance from the first offense. The charges of assault, harassment, violation of an order, and retaliation against a witness were unrelated in kind to the terroristic threats. Indeed, they involved more serious crimes and penalties. The simple fact that the incidents involved the same victim and the same accused does not mandate joinder pursuant to § 110.

Appellant nonetheless urges this court to ignore the *Flenory* decision in light of the holdings of three cases: *Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491 (1988); *Commonwealth v. Meyers*, 516 Pa. 392, 532 A.2d 789 (1987); and *Commonwealth v. Hude*, 500 Pa. 482, 458 A.2d 177 (1983). However, a careful reading of these three decisions leads us to conclude that *Flenory* was more than a mere aberration. For example, the *Lark* case did not even deal directly with a § 110 issue. In *Lark* the supreme court held that there was no abuse of discretion in denying an application for severance of charges of murder, terroristic threats, and kidnapping arising from separate incidents. In that case, the defendant had allegedly murdered a robbery victim to prevent his prosecution; threatened an assistant district attorney who had successfully prosecuted him for the robbery; and kidnapped hostages to prevent his apprehension for prior offenses. The court considered the issue pursuant to Rules 219, 1127, and 1128 of the Pennsylvania Rules of Criminal Procedure (never

considering 18 Pa.C.S.A. § 110) and determined that the jury could differentiate between the distinct offenses and that the value of consolidation outweighed any danger of prejudice or confusion.

The supreme court never engaged in an analysis as to whether § 110 would have precluded certain charges had they not been originally consolidated. These facts were not before the court in *Lark,* and we refuse to extend this holding into an area of mere conjecture. In *Lark,* three criminal episodes were inextricably tied to a single murder. The appellate court merely concluded that the trial court acted within its discretion in consolidating these charges. The *Lark* decision does not suggest that the inverse of that proposition is true with regard to the facts of the instant case, and we refuse to extend the holding and apply it to a § 110 analysis.

The *Meyers* case is also inapposite. In *Meyers* police officers were in the process of executing a search warrant when they observed the defendant leaving the residence in a vehicle. The officers believed that defendant had picked up illegal narcotics at the residence under surveillance, and a high-speed chase ensued. When they finally caught the defendant, they found illegal drugs in his possession. Despite the discovery of the drugs, the defendant was charged only with aggravated assault, resisting arrest, recklessly endangering other persons, and various violations of the vehicle code. The defendant entered a guilty plea on these charges.

It was not until a year later that he was charged with the drug-related offenses. As a result, the supreme court properly held that § 110 precluded the trial of defendant for the possession of drugs because those charges arose from the same criminal episode leading to defendant's arrest for traffic charges. The instant case is quite different from the scenario in *Meyers* because in the former, seven months separated the two criminal incidents; whereas in *Meyers,* all of the charges arose out of a high-speed chase which occurred on one day. The connection between the crimes in *Meyers* was obvious, whereas the nexus in the case at bar is more tenuous. Moreover, the *Meyers* court justified its conclusion and emphasized

a concern for the preservation of judicial resources. The instant action does not present the problem of piecemeal litigation, however, because the charges filed at Docket Number 109–91 were resolved through a *consensual* negotiated plea agreement.

Finally, any analogy to the situation in *Commonwealth v. Hude, supra,* is misplaced. In *Hude* the defendant was arrested and charged with twenty counts of possession and delivery of marijuana and one count of corruption of a minor. The charges arose out of a series of sales to the same individual which were alleged to have occurred on twenty separate days within a two and one-half month time period. Nine of the possession and delivery charges were dismissed prior to trial. The Commonwealth brought the defendant to trial on three of the remaining eleven possessions and delivery charges and on the corruption charge. He was acquitted of these charges. Subsequent to the acquittal of the above charges, the Commonwealth brought appellant to trial on the remaining eight possession and delivery charges.

The supreme court held that the drug charges brought against the defendant after his initial acquittal arose from the same criminal episode since they were so logically interrelated that they essentially involved the same issues of law and fact. As a result, the court concluded that § 110 was violated by the second drug trial and the defendant was therefore entitled to relief.

This case is distinguished from *Hude* for two reasons. First, the time span between the incidents in the instant case was seven months, whereas *Hude* involved drug activity of a continuous nature over a two and one-half month time period. Moreover, in the instant action, four of the crimes charged in the second information—harassment, assault, violation of an order and retaliation against a witness—do not involve a substantial duplication of factual and/or legal issues. These are offenses that are very different from the terroristic threat charge. The *Hude* case involved twenty possession and delivery charges, and all of the buys were made to the same witness. *Hude* presents a very different factual scenario.

12

■ Appellant also contends that the double jeopardy clause precludes the second prosecution where appellant previously entered a plea to terrorizing the same victim and the conduct and evidence from the prior case is required to establish appellant's guilt on the current charges. We will address the double jeopardy issue since a liberal reading of the omnibus pretrial motion suggests that it was raised before the trial court.[6]

We conclude that appellant's double jeopardy argument is specious, and reliance upon the United States Supreme Court case, *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), is misplaced. The *Grady* case involved a DUI-homicide. The defendant initially pleaded guilty to the charges of driving while intoxicated and driving on the wrong side of the road. However, he was subsequently prosecuted for the offense of DUI-homicide where both sets of charges arose from the same accident. The Supreme Court held that the second prosecution was barred by double jeopardy where, by its own pleadings, the State admitted that it would prove the entirety of the conduct for which defendant was previously convicted.

■ The Court explained that the double jeopardy clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove the *entirety of the conduct* that constitutes an offense for which the defendant has already been prosecuted. The critical inquiry in determining whether the government will prove conduct in the subsequent prosecution that consti-

6. We note, however, that appellant misstates the law in claiming that double jeopardy cannot be waived and may be raised at any time, even after trial and verdict. *See* appellant's brief at 19. In *Commonwealth v. Gilman*, 485 Pa. 145, 401 A.2d 335 (1979), the supreme court held that a defendant waived his claim that retrial amounted to double jeopardy because he did not move to dismiss prior to retrial on a felony murder charge. *See also Commonwealth v. Peters*, 473 Pa. 72, 373 A.2d 1055 (1977) (defendant waived double jeopardy claim by failure to raise it prior to second trial). Contrary to appellant's assertions, *Commonwealth v. Beck*, 502 Pa. 78, 464 A.2d 316 (1983), stands for the limited proposition that the doctrine of waiver has no application where the defendant was acquitted of the charge in the previous trial.

tutes an offense for which the defendant has already been prosecuted is *what conduct the State will prove, not the evidence the State will use to prove it.* Thus, the test is not an "actual evidence" or "same evidence" test. While the presentation of specific evidence in one trial does not forever prevent the government from introducing the same evidence in a subsequent proceeding, a State cannot avoid the Clause merely by altering in successive prosecutions the evidence offered to prove the same conduct. *Id.* at 521, 110 S.Ct. at 2093–2094.

In this case we are not dealing with reproof of the same conduct. Rather, this case involves two different incidents separated by time and distance. On January 4, 1991, appellant harassed and threatened Ms. Eddy. Then, seven months later he retaliated against her for her involvement in the previous prosecution. He also assaulted her, harassed her, and threatened to rape her. We agree with the Commonwealth that it can prove the elements of the offenses from the second incident without reproving the entirety of the conduct from the first incident. The facts of *Grady* are distinguished because in *Grady* the Commonwealth admitted that it needed to rely upon the conduct of driving while intoxicated and driving on the wrong side of the road in order to establish the elements of a DUI-homicide. The occurrences in *Grady* arose from the same event, whereas in this case there were two separate and distinct criminal transactions.

Although we recognize that the evidence of the prior history of the parties may be relevant during the trial on the charges filed at Docket Number 4186–91, this does not present a double jeopardy problem. The *Grady* Court stated that "presentation of specific evidence in one trial does not forever prevent the state from introducing that same evidence in a subsequent proceeding." *Id.* Indeed the retaliation charge, 18 Pa.C.S.A. § 4953, contemplates that there was a previous proceeding and that the accused is retaliating against a victim or witness for her involvement in the prosecution of the original charge. Surely, the principles of double jeopardy are not implicated in every action pursuant to § 4953 simply because the evidence of prior history is relevant.

Hence, we have concluded that neither § 110 nor the principles of double jeopardy bar the prosecution of charges filed to Docket Number 4186–91.

Accordingly, the order of the lower court is affirmed. Jurisdiction relinquished.