**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Daniel C. WITTENBURG, Appellee.**

Superior Court of Pennsylvania.

Argued March 4, 1998.
Filed April 3, 1998.

---

Joseph A. Massa, Jr., Dist. Atty., Warren, for Com., appellant.

Shawn M. Estes, Warren, for appellee.

Before JOHNSON, HUDOCK and CERCONE, JJ.

JOHNSON, Judge:

The Commonwealth appeals from the order that quashed the criminal information filed in Warren County against Daniel C. Wittenburg. The Commonwealth argues that Section 110 of the Crimes Code does not mandate the conclusion that Wittenburg's actions on November 17, 1996, constituted a single criminal episode. We hold that a single criminal episode is not implicated in this case, and, further, that the policies behind Section 110 are not advanced by such a conclusion. Accordingly, we reverse.

On November 17, 1996, Wittenburg, then age 16, went on a crime spree that encompassed several Pennsylvania counties. At approximately 4:35 p.m. on that date, Wittenburg robbed a Uni–Mart in Marienville, Forest County. Wittenburg returned to his parents' home in Butler County, where he showered, and then took his parents' automobile and his father's .357 Magnum handgun. Wittenburg left his parents' home at approximately 5:50 p.m. At 6:30, Wittenburg telephoned his former girlfriend and told her that he had robbed one store, that he intended to commit additional robberies, that he had his father's gun, and that if he was chased by the police he would "go out with a bang." Wittenburg asked the girlfriend to telephone his parents and tell them that he would not be home.

At 6:48 p.m., Wittenburg robbed a Uni–Mart in Emlenton, Venango County, taking aspirin, cigars, and cash. At 8:00 p.m., Wittenburg entered the Sparkle Car Wash in Kane, McKean County, took several items from the attached store, and left without paying for his gas. The two employees at the car wash knew Wittenburg and did not initially think that he was serious about the robbery; they changed their minds, however, when he fired the .357 Magnum handgun into an overhead canopy. After Wittenburg fled the scene, the employees called 911 and alerted area police that a maroon Pontiac had been involved in an armed robbery and was traveling westbound on State Route 6.

At 8:15 p.m., Wittenburg entered a tavern in McKean County and demanded service. The bartender requested identification, and Wittenburg brandished the .357 Magnum. The bartender gave Wittenburg a shot of alcohol and then fled to the back room to call

the police. Before leaving, Wittenburg fired several shots into the mirror behind the bar.

At 8:30 p.m., Officer Delbert C. Lowe of the Sheffield Township, Warren County, Police Department observed Wittenburg's vehicle travelling on State Route 6. Noticing that the vehicle matched the description that had been given by the employees of the car wash, Officer Lowe followed the car. Shortly thereafter, Officer Lowe was joined by Corporal Robert Lucia of the Pennsylvania State Police (Warren Barracks), and both police cars attempted to stop Wittenburg's vehicle. The chase involved speeds in excess of 80 miles per hour, during which Wittenburg repeatedly fired his gun at the officers' vehicles. Additional State Police vehicles formed a road block on State Route 6 in front of Wittenburg's vehicle. Wittenburg maneuvered through the roadblock, but then lost control of his car and drove into a ditch.

Wittenburg exited his car, and twice fired his gun at the approaching Corporal Lucia. Several officers repeatedly ordered Wittenburg to put the gun down; they heard Wittenburg yell in reply, "Shoot me you mother f* * *ers." After seeing Wittenburg shoot at Corporal Lucia, the officers returned fire and Wittenburg was wounded. He was then arrested.

Wittenburg was charged in Warren County on November 30, 1996, with attempted homicide, aggravated assault, reckless endangerment, fleeing from a police officer, and several firearms offenses. The court conducted several hearings and authorized discovery relating to the issue of whether Wittenburg should be tried in juvenile court. Ultimately, the court denied Wittenburg's request to be tried as a juvenile.

On April 9, 1997, Wittenburg was charged in Venango County with robbery and firearms offenses in connection with the Uni–Mart robbery. The Venango County court accepted a negotiated plea from Wittenburg on June 24, 1997, in which Wittenburg agreed to plead guilty to the robbery charge in exchange for the Commonwealth's agreement to nol pros the remaining Venango County charges.

Wittenburg's attorney filed a motion to quash the Warren County charges on July 2, 1997. The parties agreed that the court should consider the motion to quash utilizing the testimony garnered at the prior hearings in the case. Subsequently, the court found that the charges against Wittenburg filed in Venango County were part of the same criminal episode as the charges filed in Warren County. Based upon 18 Pa.C.S. § 110, the court found that all charges in connection with this criminal episode should have been tried together, and that Wittenburg's Venango County guilty plea precluded a trial on any other charges relating to this incident. Accordingly, the court quashed the Warren County information and dismissed the charges with prejudice. The Commonwealth now appeals.

Section 110 provides, in pertinent part, as follows:

### § 110. When prosecution barred by former prosecution for different offense

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:

\* \* \* \*

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense[.]

18 Pa.C.S. § 110(1)(ii).

■■■ "Section 110, by barring criminal prosecution for offenses arising from the same criminal episode on which a previous prosecution was based, effectively creates a rule of compulsory joinder." *Commonwealth*

v. *Bracalielly*, 540 Pa. 460, 470, 658 A.2d 755, 760 (1995). This compulsory joinder rule serves two distinct policy considerations: (1) to protect a criminal defendant from the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode; and (2) as a matter of judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation. *Commonwealth v. Hude*, 500 Pa. 482, 489, 458 A.2d 177, 180 (1983). Stated another way, the purpose behind Section 110 is to "shield the accused from duplicitous, sequential trials. Such trials promise unnecessary delay, unnecessary expense to the accused and the Commonwealth, unnecessary duplication of judicial resources, and unnecessary aggravation to the accused and witnesses." *Commonwealth v. McPhail*, 547 Pa. 519, 530 n. 4, 692 A.2d 139, 144 n. 4 (1997).

Section 110(1)(ii) will only bar the instant prosecution if: (1) the Venango County prosecution resulted in an acquittal or a conviction; (2) the Warren County prosecution is based on the same criminal conduct or arises from the same criminal episode as the Venango County prosecution; (3) the Venango County prosecutor was aware of the Warren County charges before commencing the trial in Venango County; and (4) the Warren County charges and the Venango County charges were within the jurisdiction of a single court. *Bracalielly, supra.*

■ Here, Wittenburg pleaded guilty in Venango county to robbery. "A guilty plea constitutes a conviction for purposes of pursuing further prosecution pursuant to 18 Pa. C.S. § 110." *Id.* at 470, 658 A.2d at 760. Thus, the first requirement is satisfied here. In addition, there is no dispute that the Venango County prosecutors had knowledge of the pending Warren County charges at the time that they initiated the Venango County proceedings. The Venango County presentence report notes that Wittenburg was currently residing in the Warren County jail. Accordingly, the third requirement is also satisfied in this case.

■ Regarding the requirement that all charges be within the jurisdiction of a single court, the Pennsylvania Supreme Court recently addressed this issue in *McPhail, supra*. The Commonwealth correctly points out that *McPhail* is a plurality decision, and thus has limited precedential value. However, despite the lack of a majority rationale in *McPhail*, the *result* of that decision is clear: it can no longer be disputed that courts of common pleas have statewide jurisdiction and may preside over trials that concern events which take place beyond the territorial limits of the county in which the court sits. *See, McPhail, supra*, at 530, 692 A.2d at 144 (Opinion announcing the Judgment of the Court), *id.* at 542, 692 A.2d at 150–51 (Cappy, J., concurring), *id.* at 530, 692 A.2d at 145 (Justice Nigro Concurs in the Result). *See also Commonwealth v. Kirkland*, 700 A.2d 482, 484 (Pa.Super.1997) (following *McPhail* and concluding that courts of disparate counties each have subject matter jurisdiction over the criminal proceedings that concern crimes committed in both counties). Thus, we conclude that the instant charges against Wittenburg were within the jurisdiction of a single court.

■ Nevertheless, the Warren County prosecution will be permitted to proceed against Wittenburg unless we determine that the crimes in Warren and Venango Counties were part of a single criminal episode. "The term 'same criminal episode' can be amorphous and troublesome to apply." *Bracalielly, supra*, at 471, 658 A.2d at 761. The determination of what constitutes a single criminal episode must not be approached in a rigid or hypertechnical manner that would defeat the purposes underlying Section 110. *Id.* Rather, when determining what constitutes a single criminal episode, we consider (1) the temporal relationship between the acts in question and (2) the logical relationship between the acts. *Id.; see also Hude, supra*, at 491–92, 458 A.2d at 182. In determining whether a number of offenses are "logically related" to one another, a court should inquire into whether there is a substantial duplication of factual and/or legal issues presented by the offenses; if there is substantial duplication, then the offenses are logically related and must be prosecuted at one trial. *Id.*

Here, Wittenburg was charged with robbery and firearms offenses in connection with the Uni–Mart robbery that occurred at 6:48 p.m. on November 17, 1996, in Venango County. The charges filed in Warren County concern the shoot-out and high speed chase that occurred on State Route 6 beginning at approximately 8:30 p.m. on that same date. We recognize that these two incidents have a close temporal relationship. Although this temporal factor is important, however, it is not dispositive. We must consider the logical relationship between the two incidents.

In Venango County, Wittenburg pleaded guilty to robbery, and certain firearms offenses were nol prossed. A nol pros is neither a conviction nor an acquittal; consequently, section 110 does not apply to the Venango County firearms charges. *See Commonwealth v. Perillo*, 426 Pa.Super. 1, 4–6, 626 A.2d 163, 165 (1993). In Warren County, Wittenburg is charged with attempted homicide, aggravated assault, reckless endangerment, fleeing from a police officer, and firearms offenses. Thus, the charges are not duplicated; the elements of the crimes that would be proven in Warren County are quite distinct from those relating to the Venango County robbery charge.

Further, the officers who participated in the Warren County car chase and shoot-out were not witnesses to Wittenburg's activities at the Uni–Mart. Thus, had a trial occurred in Venango County, the Warren County officers could not testify regarding Wittenburg's commission of the robbery; the clerk who was in the Uni–Mart at that time would have been called to identify Wittenburg as the robber. This case is therefore dissimilar from *Hude*, where the Pennsylvania Supreme Court held that Section 110 barred a second trial because the Commonwealth's case revolved around the testimony of the same witness that had been used during the first trial. *Hude, supra.*

This case is more similar to *Bracalielly*, which involved a defendant who sold drugs to police officers in both Allegheny and Butler Counties during a span of less than three weeks. Both police investigations used the same confidential informant. Our supreme court found that Section 110 did not bar the second trial in Allegheny County, in part because "no law enforcement officer from Allegheny County participated in the Butler County transactions, and no law enforcement officer from Butler County participated in the Allegheny County transactions." *Bracalielly, supra*, at 473–74, 658 A.2d at 762. The court reasoned that proof of each individual instance of possession and delivery in each county would not rest solely on the credibility of a single witness, but would instead require testimony from completely different police officers and expert witnesses as well as the establishment of separate chains of custody. *Id.* Thus, even though the same informant was used, the crimes did not present a substantial duplication of issues of fact and law such that a logical relationship between the crimes was established. *Id.*

It is possible that, if Wittenburg had stood trial in Venango County, the Warren County officers may have been called to testify about the goods stolen from the Uni–Mart and Wittenburg's possession of the .357 Magnum; these items were recovered in the car in Warren County. However, we are mindful that "a mere de minimis duplication of factual and legal issues is insufficient to establish a logical relationship between the offenses." *Bracalielly*, 540 Pa. at 472, 658 A.2d at 761. We hold that Wittenburg's possession of these items in Warren County is such a de minimis duplication of issues. Considering all the circumstances of the offenses here involved, we conclude that separate trials of the two incidents would not involve a substantial duplication of factual or legal issues. Thus, the incidents are not part of the same criminal episode and Section 110 will not bar the Warren County charges from proceeding to trial. *Id. Cf. Commonwealth v. Hockenbury*, 549 Pa. 527, 701 A.2d 1334 (1997)(finding that two incidents of receiving stolen property were not the same criminal episode; both incidents involved jewelry stolen in the same burglary but were three months apart and occurred in different counties); *Commonwealth v. Lane*, 442 Pa.Super. 169, 658 A.2d 1353 (1995)(holding that two offenses were not part of the same criminal episode simply because the defendant was

arrested for committing robbery and for drug offenses at the same time and because he possessed one of the robbery items at the time of the arrest); *Commonwealth v. Walton*, 405 Pa.Super. 281, 592 A.2d 335 (1991) (where offenses of illegally possessing a firearm and of making a false report to police were committed at different locations and more than nine hours apart, the offenses were not part of the same criminal episode).

Wittenburg argues that these offenses are part of the same criminal episode because all of the Warren County offenses occurred while police officers were attempting to apprehend Wittenburg for the offenses committed in Venango and other counties. Wittenburg relies upon the following statement:

"Two separate offenses may constitute the same criminal episode if one offense is a necessary step toward the accomplishment of a given criminal objective or if additional offenses occur because of an attempt to secure the benefit of a previous offense or conceal its commission." *Commonwealth v. Walton*, 405 Pa.Super. 281, 592 A.2d 335, 337 (1991).

*Lane, supra*, at 172, 658 A.2d at 1355.

After review, we conclude that these factors do not apply to the instant case. First, it is clear that the robbery in Venango County is not a necessary step toward the accomplishment of the crimes with which Wittenburg is charged in Warren County (attempted homicide, aggravated assault, reckless endangerment, and fleeing from a police officer). The language used in *Lane* is similar to the statutory definition of a criminal attempt, "any act which constitutes a substantial step toward the commission of th[e] crime." 18 Pa.C.S. § 901(a). None of the Warren County charges require robbery as a prerequisite to their commission.

██ Wittenburg argues, however, that the Warren County high-speed car chase and the resulting crimes occurred because of Wittenburg's attempt to either secure the benefit of his previous crimes or to conceal his complicity in the prior crimes. The trial court seemingly agreed, stating: "The events in Warren County were either an attempt to escape prosecution for the Venango and McKean County crimes or they were, as the

Defendant stated, an attempt to provoke a shoot-out with the police as he had predicted prior to the Venango County crime." Trial Court Opinion, dated August 13, 1997, at 17. The allegation that Wittenburg was attempting to conceal his commission of the crimes is belied by his activities on the night in question, including his telling a robbery victim his name and his knowingly robbing a store where he knew a friend to be working at the time. Further, after study, this Court can find no support for the proposition that Wittenburg's subjective state of mind at the time that the crimes occurred is relevant to our analysis. Instead, we find that it would defeat the policies behind Section 110 if we were to permit a criminal defendant to dictate through his subjective intent when this section should apply. Rather, we must look at the objective facts and determine whether (1) the defendant would be subjected to governmental harassment by successive trials, and (2) the judicial process would be burdened by repetitious litigation. *Hude, supra.*

This is not to say that the criminal defendant's intent should never be considered when making the determination that a series of criminal acts constitutes a single criminal episode. In the interests of justice, however, courts must not permit a criminal defendant to decide to plead guilty to a lesser crime in one county in an attempt to escape prosecution for a more serious crime in another. This Court recently considered a similar question in *Commonwealth v. Cicconi*, 439 Pa.Super. 81, 653 A.2d 40 (1995). In *Cicconi*, the appellant entered the home of his cousin and sexually assaulted her. He was then charged with rape, involuntary deviate sexual intercourse, aggravated indecent assault, and indecent assault. While a trial was pending, the Commonwealth sought to amend the criminal information to include a burglary charge based upon the same incident. Cicconi objected to the amendment, and it was denied. Thereafter, the Commonwealth filed a second information that charged Cicconi with the burglary. Cicconi pleaded guilty to the burglary charge. He then filed a motion to quash the first criminal information, alleging that the Commonwealth had violated Sec-

tion 110 because all charges arose from the same criminal episode. The trial court granted the motion to quash.

In reversing, this Court discussed the policies behind Section 110 before concluding that the Cicconi's "procedural maneuvering was motivated by a desire to escape prosecution for rape, involuntary deviate sexual intercourse, aggravated indecent assault and indecent assault . . . [and this] is not the type of protection intended by Section 110." *Cicconi, supra,* at 88–89, 653 A.2d at 44. We noted that Cicconi, as well as the Commonwealth, could have petitioned for joinder of the two criminal informations. We stated that "[t]he relatively drastic remedy of Section 110 should only be applied when an accused has not foregone the opportunity of moving to join all offenses in one prosecution. To hold otherwise is simply to foster chicanery by defense counsel." *Id.* at 87, 653 A.2d at 43 (citation omitted). We further stated: "This type of maneuvering [is] condemned by this Court as gamesmanship by the defendant." *Id.*

In this case, the Warren County charges were initiated against Wittenburg on November 30, 1996. Wittenburg pleaded not guilty after his arraignment on January 23, 1997. On March 11, 1997, Wittenburg filed a petition seeking to transfer the action to juvenile court. Pursuant to this request for a transfer, Wittenburg was twice examined by a psychologist, Dr. Charles Steinmeyer, and the Warren County court conducted two days of hearings, on April 3 and May 2, 1997. Between the two hearings, on April 9, 1997, Wittenburg was charged in Venango County. Then, after the Warren County court denied Wittenburg's request for a transfer on May 2, 1997, Wittenburg agreed to plead guilty in Venango County. Eight days later, Wittenburg sought to quash the more serious offenses pending in Warren County under the aegis of Section 110.

Although Wittenburg's actions are not as egregious as those of the defendant in *Cicconi,* we hold that the drastic remedy of precluding trial in Warren County is not appropriate in this case because the policies behind Section 110 would not be served by such a result. Warren County expended considerable resources in adjudicating the issue of whether to try Wittenburg as an adult. Moreover, the Venango County guilty plea occurred before the Warren County trial in part because of Wittenburg's request for the juvenile decertification proceedings. Under the circumstances, it would be unjust to permit the guilty plea on the lesser charge of robbery to thwart Wittenburg's trial on the attempted murder and related Warren County charges.

In conclusion, we hold that the Warren County and Venango County incidents are not part of the same criminal episode. Further, because we find that Wittenburg will not be subjected to governmental harassment by successive trials, nor will the judicial process be unduly burdened by permitting the Warren County prosecution to proceed, we conclude that the trial court erred in quashing the Warren County charges under Section 110. Accordingly, we will reverse the order of August 13, 1997, reinstate the original charges filed in Warren County against Wittenburg, and remand the matter for trial.

Order **REVERSED.** Charges **REINSTATED.** Case **REMANDED** for trial. Jurisdiction **RELINQUISHED.**