COMMONWEALTH of Pennsylvania, Appellee,

v.

Michael J. TRAVAGLIA, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 28, 1998.

Filed Dec. 15, 1998.

Reargument Denied Feb. 19, 1999.

Ned J. Nakles, Jr., Latrobe, and Dante G. Bertani, Public Defender, Greensburg, for appellant.

Thomas R. Grace, Asst. Dist. Atty., Greensburg, for Com., appellee.

Before FORD ELLIOTT, JOYCE, and TAMILIA, JJ.

JOYCE, J.:

Appellant, Michael J. Travaglia, appeals from the Order of the trial court denying his motion to bar re-sentencing. For the reasons set forth below, we affirm. During a seven (7) day period beginning at the end of December, 1979 and ending on January 3, 1980, Appellant participated in four (4) separate murders. Three (3) murders were committed in Indiana County and one (1) in Westmoreland County. The three (3) murders in Indiana County occurred on December 28, 1979, January 1, 1980 and January 3, 1980. John Lesko participated in all the murders and Richard Rutherford accompanied Appellant and Lesko in the last two (2) murders. The relevant facts and procedural history of this case are as follows.

On December 27 and continuing into December 28 of 1979, Appellant and John Lesko kidnapped Peter Levato and stole his automobile. They drove Levato to a remote area where they proceeded to throw him off a bridge. When Levato did not die, Appellant and Lesko searched for him and ultimately shot him to death with a handgun. Appellant pled guilty.

On January 1, 1980, Marlene Newcomer offered Appellant and Lesko a ride. They robbed her and shot her with the same handgun used to kill Levato. Appellant pled guilty.

In the late evening hours of January 2, 1980, Appellant, accompanied by John Lesko and Richard Rutherford, kidnapped William Nichols. They stole Nichols' vehicle and forced him to ride along with them. During

the course of the ride, Appellant shot Nichols in the arm, repeatedly punched him and taunted him with a knife. After losing consciousness, Nichols was gagged and taken to a wooded location in Indiana County where he was handcuffed and his feet bound. Appellant and Lesko dragged Nichols down to a lake and rolled him into the water where he subsequently drowned. Appellant pled guilty to this murder.

In the early morning hours of January 3, 1980, Apollo, Westmoreland County, police officer Leonard Clifford Miller saw the trio speed past his car in the vehicle stolen from Nichols. Officer Miller pursued them and eventually forced the vehicle off the road. Appellant shot Officer Miller twice as he approached the vehicle, killing him. Appellant and Lesko were arrested on January 3, 1980, after police officers investigating a string of murders connected to Appellant, located the stolen Nichols' vehicle. Appellant was charged with the murders of Levato, Newcomer and Nichols in Indiana County. He was also charged with the murder of Officer Miller in Westmoreland County. Appellant pled guilty to the three (3) Indiana County murders. However, the Westmoreland County murder conviction has had a long and tortured procedural history lasting sixteen (16) years.

Initially, Appellant and Lesko demanded a jury trial in Westmoreland County, following which both were found guilty of first degree murder. Appellant was sentenced to death on June 4, 1982. Appellant's judgment of sentence was affirmed by the Pennsylvania Supreme Court and certiorari was denied in *Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3200, 105 L.Ed.2d 707 (1989).

Appellant filed his first petition for post-conviction relief and a hearing was held in September of 1985. His petition was denied on October 4, 1985. This Court affirmed in *Commonwealth v. Travaglia*, 359 Pa.Super. 630, 515 A.2d 620 (Pa.Super.1986), *appeal denied*, 518 Pa. 639, 542 A.2d 1368 (1987), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3200, 105 L.Ed.2d 707 (1989).

Governor Casey signed an execution warrant on June 8, 1990. A petition to stay execution was filed by Appellant in the federal court and granted by Judge Bloch on September 9, 1990 to allow Appellant time to file a petition for a writ of *habeas corpus.* Appellant filed a second petition for post-conviction relief and a hearing was held in March of 1992. The trial court denied the petition on May 19, 1993. Appellant directly appealed to the Supreme Court, which affirmed and certiorari was denied in *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352 (1995), *cert. denied*, 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996).

Appellant filed a supplemental petition for *habeas corpus* on May 21, 1996. Judge Bloch of the federal district court remanded for re-sentencing finding that the evidence of the Indiana County guilty plea in the Nichols case should have been excluded based on the plea agreement entered into by the parties. All other requested relief was denied. Appellant thereafter filed an omnibus pre-trial motion with the trial court seeking to bar re-sentencing based on the Supreme Court's decision in *Commonwealth v. McPhail*, 547 Pa. 519, 692 A.2d 139 (1994). The trial court denied this motion on December 16, 1997, however, the court granted Appellant the right to file an immediate appeal. This timely appeal followed.

Appellant raises the following issues for our review: (1) whether re-sentencing Appellant in the Westmoreland County murder is barred by the application of 18 Pa.C.S.A. § 110 and the holding in *McPhail*; (2) whether the evidence surrounding the Nichols murder should be excluded at re-sentencing based on the plea agreement; (3) whether the alleged comments of then District Attorney Al Nichols that he would not seek the death penalty in the event of a retrial precluded seeking the death penalty instantly; (4) whether the 1988 amendments to 42 Pa.C.S.A. § 9711(h)(4): (a) violate equal protection rights of Appellant in that they inappropriately require certain defendants to face the death penalty based on the erroneous decision of the state court prior to the amendments; (b) violate due process rights; (c) constitute an ex-post facto law; (5) whether the Pennsylvania sentencing statute violates due process by permitting the imposi-

tion of the death penalty in an arbitrary fashion at the prosecutor's discretion; and (6) whether the designation of law enforcement officers, as set forth in 42 Pa.C.S.A. § 9711(d)(1), as an aggravating circumstance, arbitrarily and inappropriately places a higher worth on the value of their lives violating equal protection.

 Appellant contends the trial court erred in finding 18 Pa.C.S.A. §110 and the Supreme Court's recent holding in *Commonwealth v. McPhail,* 547 Pa. 519, 692 A.2d 139 (Pa.1994) does not apply to the case at bar.[1] Although the trial court found that all of the requirements of *McPhail* were met, the court determined that the holding did not apply retroactively. We find that the court properly determined that *McPhail* does not apply, however, we base our decision on a finding that Appellant's acts did not fall under the statutory definition of a single criminal episode.[2]

Section 110 provides, in relevant part, as follows:

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for: ...

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court

unless the court ordered a separate trial of the charge of such offense.

18 Pa.C.S.A. § 110(1)(ii). The official comment clarifies when events fall under the definition of a single criminal episode:

Under existing law, if two crimes arise out of the same facts and one does not involve the other (i.e., one is not a step to the other), then a prosecution of one has no bearing on the other and the defendant may be prosecuted for the other regardless of the outcome of the first prosecution. In other words, if the offenses are distinct and separate, the outcome of a trial of the prosecution of one has no bearing on the subsequent prosecution of the other.

18 Pa.C.S.A. § 110, Official Comment (citations omitted). The bar to subsequent criminal prosecution in light of the *McPhail* decision has recently been discussed in *Commonwealth v. Wittenburg,* 710 A.2d 69 (Pa.Super.1998), *appeal denied,* 1998 LEXIS 1888, —— Pa. ——, —— A.2d ——, 1998 WL 550196 (Pa. September 1, 1998). There the Court stated:

Section 110, by barring criminal prosecution for offenses arising from the same criminal episode on which a previous prosecution was based, effectively created a rule of compulsory joinder. This compulsory joinder rule serves two distinct policy considerations: (1) to protect a criminal defendant from the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode; and (2) as a matter of judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation. Stated another way, the purpose behind Section 110 is to shield the accused from duplicitous, sequential trials. Such trials promise unnecessary delay, unnecessary

1. The Commonwealth counters Appellant's argument by contending that *McPhail, supra* does not apply to the facts of this case because Appellant is solely facing a re-sentencing hearing, unlike *McPhail* in which Appellant was facing a trial to determine his guilt or innocence. The Commonwealth's argument, however, must fail. Appellant's *McPhail* issue centers around whether the prior plea acted as a bar to a subsequent prosecution on double jeopardy grounds. That is the exact argument presented in *McPhail, supra.* Therefore, if we were to find that the require-

ments of *McPhail* are met and that the decision applies retroactively, Appellant's claims would merit review.

2. We note that the Supreme Court's decision in *McPhail, supra* is a plurality decision, and thus has limited precedential value. *See Commonwealth v. Cooper,* 710 A.2d 76, 79 (Pa.Super.1998) (finding that plurality opinions are not binding precedent).

expense to the accused and the Commonwealth, unnecessary duplication of judicial resources, and unnecessary aggravation to the accused and witnesses.

*Id.* at 72–73 (citations and quotation marks omitted).

In *Wittenburg* various offenses were committed within two counties. The initial offense involved a robbery in Venango County, which led to a high speed chase involving the police in Warren County, and ultimately resulted in the defendant firing several shots at the officers. Wittenburg pled guilty to the robbery in Venango County. He then sought to quash the charges in Warren County based on the provisions of section 110. The Court found that the plea of guilty constituted a conviction for purposes of section 110; that the prosecutors in Venango County were well aware of the charges in Warren County at the time of the proceedings; and that pursuant to *McPhail, supra,* all the charges were within the jurisdiction of a single court. However, the Court carefully analyzed the requirement that the crimes involve the same criminal episode and concluded that the facts of the case did not warrant such a finding. In arriving at this determination, the Court considered several factors including that the charges in the two (2) counties were not duplicated, the elements of the crimes that would be proven in one county were distinct from those in the other county, and that the factual witnesses for each incident were distinct.

This determination likewise applies to the case at bar. Appellant pled guilty to the murders of Newcomer, Levato and Nichols, thus satisfying the first requirement of Rule 110. Prosecutors in Westmoreland County were aware of the impending charges in Indiana County at the time of the proceedings. Accordingly, the third requirement is also satisfied. Pursuant to *McPhail,* all of the charges were within the jurisdiction of a single court. *See McPhail,* 547 Pa. at 530, 692 A.2d at 144 (finding that the courts of common pleas have statewide jurisdiction and may preside over trials that concern events taking place beyond the territorial limits of the county in which the court sits). Despite meeting the first three requirements

of the statute, the crimes cannot be said to constitute a single criminal episode.

The term 'same criminal episode' can be amorphous and troublesome to apply. The determination of what constitutes a single criminal episode must not be approached in a rigid or hypertechnical manner that would defeat the purposes underlying Section 110. Rather, when determining what constitutes a single criminal episode, we consider (1) the temporal relationship between the acts in question and (2) the logical relationship between the acts. In determining whether a number of offenses are "logically related" to one another, a court should inquire into whether there is a substantial duplication of factual and/or legal issues presented by the offenses; if there is substantial duplication, then the offenses are logically related and must be prosecuted at one trial.

*Wittenburg,* 710 A.2d at 73.

Although the events in the case at bar arguably have a close temporal relationship, the logical relationship between the crimes is lacking. Appellant claims that because evidence of the circumstances leading up to the murder of Officer Miller were admissible at trial and the officer's murder occurred while he was attempting to apprehend Appellant for the offenses committed in Indiana County, the offenses were a part of the same criminal episode. The same exact argument, however, was rejected in *Wittenburg.*

Wittenburg claimed that the offenses were a part of the same criminal episode where they occurred while police officers were attempting to apprehend him for the robbery committed in the other county. He claimed, in essence, that his subjective state of mind at the time dictated that the crimes were interrelated, i.e., the fleeing would not have occurred absent his subjective state of guilt to the commission of the prior crimes. In rejecting this argument, this Court stated:

Further, after study, this Court can find no support for the proposition that Wittenburg's subjective state of mind at the time that the crimes occurred is relevant to our analysis. Instead, we find that it would defeat the policies behind Section 110 if we were to permit a criminal defendant to

dictate through his subjective intent when this section should apply. Rather, we must look at the objective facts and determine whether (1) the defendant would be subjected to governmental harassment by successive trials, and (2) the judicial pro- cess would be burdened by repetitious liti- gation.

*Id.* at 75.

The policy considerations underlying sec- tion 110 would not be served in the case at bar by allowing such a drastic remedy as precluding the re-sentencing of Appellant. As in *Wittenburg*, it would be unjust to allow such a result where one crime was merely temporally related to the other and was not a logical step in its commission. In the instant case, the murder of Marlene Newcomer had nothing to do with the kidnapping and mur- der of Peter Levato four (4) days earlier. Clearly one murder was not a step necessary to the completion of the other. Likewise, the Nichols kidnapping and murder was in no way connected to the first two (2) murders. The killing of Officer Miller, although com- mitted during an attempt to apprehend Ap- pellant for antecedent criminal acts, was not the final necessary step relevant to the crimi- nal conduct. It was necessary that Appellant commit some wrongdoing to occasion the chase, however Officer Miller's murder was committed in an attempt to avoid apprehen- sion, not as a part of the prior three (3) murders. This case is clearly distinguishable from *McPhail, supra,* where the drug sale and purchases between the two counties clearly involved one continuous event.

In *McPhail, supra,* the defendant sold a small quantity of cocaine to an undercover agent of the Pennsylvania state police in Washington County. On a second occasion, Appellant told the trooper that they would need to go to Allegheny County to obtain a larger quantity. Consequently, the second sale occurred in Allegheny County. The fi- nal sale to the trooper occurred in Washing- ton County a few weeks later. Clearly, the transactions in *McPhail* constituted a single criminal episode where it was necessary to obtain drugs from another county in order to make a sale of the drugs requested in the other. Those special circumstances do not exist in the case at bar. The murder of Officer Miller was not so clearly dependent on the occurrences in the Indiana County. Rather, it was a singular event unrelated and independent of the prior conduct. Therefore, the trial court properly found section 110 inapplicable to the case at bar.

■ Appellant next contends that the evi- dence of the circumstances surrounding the Nichols murder, along with the actual plea, should be excluded at re-sentencing. This same exact issue was decided in the compan- ion case of *Commonwealth v. Lesko*, 719 A.2d 217 (Pa. 1998). Relevantly, the Supreme Court found:

> The district court ruled that appellant's guilty plea was wrongfully induced by the representation that it would not be intro- duced during the penalty phase of the Westmoreland County case involving the murder of Officer Miller. Since the Nich- ols guilty plea was introduced in the Miller case, the district court determined that a second penalty proceedings was to be con- ducted in the Miller case and that evidence of the guilty plea in the Nichols matter was not to be introduced in the second Miller penalty trial. At the second penalty hearing, over defense objection, the Com- monwealth introduced evidence of the Nichols conviction and the circumstances of the Nichols murder, but not the guilty plea. The evidence which was introduced was not considered as an aggravating fac- tor in sentencing; instead, it was used to demonstrate appellant's motive and intent in killing Officer Miller. . . .
>
> At trial, Lesko and Travaglia's sole de- fense to the charge of first degree murder was that they each lacked the requisite intent to kill. . . . The jury could only have fairly evaluated the Commonwealth's theory regarding Lesko's state of mind by hearing evidence tending to show that Tra- vaglia and Lesko had jointly embarked that evening on a crime spree, that they had already committed a homicide likely to command the death penalty, that they had in their possession powerful evidence of their guilt of that homicide. Moreover, to be in a position to evaluate Lesko's state of mind during the critical moments during

the Miller encounter, the jury needed to hear sufficient details about these matters to be able to appreciate the nature of the evening's joint undertaking, the relationship and mood of the participants, and the extent of the criminal exposure of those participants in the event of their apprehension by Miller....

The Supreme Court concluded that the circumstances surrounding the murder of Nichols were admissible for the jury to consider in imposing a sentence. The jury was properly instructed that the events surrounding the Nichols murder were solely introduced into evidence to show motive and the circumstances surrounding the murder. The Court found no error in the admission of such evidence. We decline to assign error under the same circumstances.

Appellant alleges that the District Attorney at the time of the trial, Al Nichols, stated that he would not seek the death penalty in the event of a retrial of the Miller case and that, therefore, the Commonwealth was precluded from seeking the death penalty instantly. This, however, is not an accurate account of the statement and its limited purpose. Following trial on the Miller murder, Appellant faced a trial on both the Newcomer and Levato murders. Appellant claims that the alleged comment by the District Attorney induced him to plead guilty to those murders on March 23, 1981.

Contrary to Appellant's contention, the plea colloquy indicates that the guilty pleas would not be used as aggravating circumstances should the Miller case be retried. There is no mention that the District Attorney represented that he would not seek the death penalty based on other aggravating circumstances, i.e., the police officer's death. Therefore, Appellant's claim is meritless.

■ Next, Appellant asserts that the 1988 amendments to 42 Pa.C.S.A. section 9711(h)(4) violate due process and constitute ex-post facto law. This argument was addressed in the companion case decided by the Supreme Court in *Lesko, supra,* where the Court stated:

Under the sentencing statute that was previously in effect, a remand for imposition of a sentence of life imprisonment would

indeed have been required. However, the statute was amended in 1988 to provide that a new sentencing hearing must be conducted whenever a sentence of death is vacated, except where it is vacated for disproportionality or lack of evidence of aggravating factors. Appellant argues that his due process and ex post facto rights under the federal and state constitutions were violated by subjecting him to resentencing under the amended statute. The same arguments have already been rejected by this court. We have repeatedly held that the revised sentencing provision can be applied to cases, like appellant's, that were pending in the appellate process at the time of the amendment.

Appellant further asserts that the resentencing provision does not apply where a death sentence has been vacated by any court other than the Supreme Court of Pennsylvania. He relies on the [language of the statute]. Appellant reasons that because the statute does not specify what is to occur when courts other than this one vacate a sentence, the legislature must have intended that there would be no new sentencing hearing and that a remand for imposition of a life sentence would occur. Such an approach would lead, however, to a highly irrational sentencing scheme. Those whose sentences are vacated by this court would be in a far worse position than those whose sentences are vacated by other courts, since the former would be at risk of incurring another death sentence while the latter would not. The legislature cannot be deemed to have intended such an illogical result....

Further, appellant asserts that the resentencing provision is inapplicable to cases that were pending before any court other than the Supreme Court of Pennsylvania at the time of the 1988 amendment. Appellant notes that, because we completed appellate and post-conviction review of this matter in 1986, this case was not pending before us at the time of the 1988 amendment. The statute contains no language, however, that makes it applicable only to cases pending in a particular court. In fact, the legislature expressly designated

**197**

that the amendment should be applied to all criminal cases and appeals pending on the effective date of the act. This plainly sets no limits as to the courts in which cases and appeals were pending.

*Lesko*, 719 A.2d at 220 (citations and quotation marks omitted). Thus, we too reject Appellant's contentions.

■ Appellant alleges that the Pennsylvania sentencing statute violates due process by permitting the imposition of the death sentence in an arbitrary fashion at the prosecutor's discretion. The constitutionality of this provision, however, has been repeatedly upheld. *See Commonwealth v. DeHart*, 512 Pa. 235, 516 A.2d 656, 670 (Pa.1986) (finding that the death penalty statute was constitutional and rejecting defendant's argument that prosecutorial discretion in seeking the death penalty violates due process by allowing for arbitrary selection of its imposition).

■ Lastly, Appellant contends that the designation of law enforcement officers set forth in 42 Pa.C.S.A. § 9711(d)(1) as aggravating circumstances for considering the death penalty, arbitrarily and inappropriately places a higher worth on the value of their lives violating equal protection. We cannot agree with this contention. This designation has repeatedly been upheld. *See Commonwealth v. Gibbs*, 533 Pa. 539, 626 A.2d 133 (1993) (upholding sentence where 42 Pa. C.S.A.§ 9711(d)(1) applied). Providing such a sentencing provision, where the murder of a police officer while performing his duties is an aggravating circumstance, does not violate equal protection. Rather, as the trial court duly noted, it provides a deterrent to killing individuals who routinely risk their lives in the field of law enforcement. Trial Court Opinion, 12/16/97, at 15. Finding no basis upon which to disturb the findings of the trial court, we affirm.

Order affirmed.

FORD ELLIOTT, J., files Concurring Statement.

FORD ELLIOTT, J., concurring:

While I am in accord with the majority's discussion of *Commonwealth v. McPhail, supra*, generally, I agree with the Common-wealth's position that *McPhail* has no application under the facts of this case. Therefore, I concur in the result reach by the majority.