J-S34043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                  :          PENNSYLVANIA
                                  :
           v.                        :
                                  :
                                  :
EDWARD CHESTER WALLS             :
                                  :
            Appellant          :     No. 1398 WDA 2023

Appeal from the PCRA Order Entered October 31, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008331-1996

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                  :          PENNSYLVANIA
                                  :
           v.                        :
                                  :
                                  :
EDWARD CHESTER WALLS             :
                                  :
            Appellant          :     No. 1399 WDA 2023

Appeal from the PCRA Order Entered October 31, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0009738-1996

BEFORE:  DUBOW, J., LANE, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:      **FILED:  November 14, 2024**

Appellant, Edward Chester Walls, appeals from the order entered in the

Court of Common Pleas of Allegheny County dismissing his patently untimely

petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A.

§§ 9541-9546.  After careful consideration, we affirm.

_____

* Former Justice specially assigned to the Superior Court.

This Court previously has set forth the relevant underlying facts, as follows:

On May 25, 1996, Michael Mammarella reported that his maroon 1993 Honda Accord vehicle had been stolen. At approximately 9:00 p.m. that same evening, Torie Jones, Nicole Jay, Tanika Maddox, Robert Johnson, Starlin Kyles and Michael Kyles stood alongside Mount Pleasant Road. Within minutes, a maroon car passed by and fired four to five shots. As a result of the shooting, Torie Jones sustained a fatal gunshot wound to the head. As police responded to the incident, they observed a maroon-colored vehicle leaving the scene at a high rate of speed. While the police pursued the vehicle, several shots were fired at them. Eventually, police apprehended [Walls], who had been wounded by the return of fire by police. Police also located a gun nearby.

. . .

Critically, Starlin Kyles testified that he observed [Walls] stick his head out the vehicle's window and subsequently fire[] shots at the group. Likewise, Michael Kyles identified [Walls] as the shooter. Both of these witnesses were familiar with [Walls] from the neighborhood. Further, Officer Guy Collins testified that [Walls] attempted to hide himself in the vehicle when police finally forced the vehicle to a stop. Officer Collins also found the gun used in the shooting near the location where [Walls[] was apprehended.

. . .

On March 6, 1997, Walls[, who was a juvenile at the time he committed the crimes charged herein,] was tried as an adult and convicted of first-degree murder and other offenses. On April 30, 1997, he was sentenced to a mandatory term of life imprisonment. [The Pennsylvania Superior Court] affirmed Walls' judgment of sentence on August 11, 1999. Walls filed a PCRA petition on July 7, 2004, claiming ineffective assistance of counsel, which the PCRA court dismissed on January 19, 2006. Another PCRA petition was filed on July 14, 2010, which the court dismissed without a hearing.

On July 10, 2012, Walls filed a motion for post conviction relief from the mandatory life sentence following the United States

- 2 -

> Supreme Court decision in *Miller v. Alabama*, 567 U.S. 460 (2012). The PCRA court stayed its decision until a higher court subsequently dismissed Walls' petition when the Pennsylvania Supreme Court, in *Commonwealth v. Cunningham*, 81 A.3d 1 (Pa. 2013), found *Miller* did not apply retroactively. On December 17, 2013, Walls filed a timely appeal, and this Court issued a memorandum opinion affirming the PCRA court on November 10, 2014. On February 17, 2016, the Pennsylvania Supreme Court granted Walls' ensuing petition for allowance of appeal when *Miller* was made retroactive in *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), and remanded the case to this Court for further proceedings. On March 30, 2016, this Court remanded Walls' case for resentencing.

*Commonwealth v. Walls*, No. 780 WDA 2018 (Pa. Super. filed March 15, 2019).

In 2017, prior to Appellant's resentencing,[1] he filed the present PCRA petition, in which he claims the availability of newly discovered exculpatory evidence that would have changed the outcome of his trial had it been available at the time. *See* § 9543(a)(3)(vi). Specifically, the evidence consists of a written recantation statement offered by eyewitness Starlin Kyles, who testified at the criminal trial that he witnessed Appellant fire gunshots that killed Torie Jones. The written statement, which was prepared by Appellant's attorney and signed by Mr. Kyles, provided, in pertinent part, that he told police investigators he lacked a clear view of the shooter despite his proximity to the car from which the fatal shots were fired:

---

[1] Upon remand for resentencing, the trial court imposed an aggregate sentence on Appellant of 41½ years' to life imprisonment. Appellant appealed to this Court, which affirmed judgment of sentence on March 25, 2019. On June 7, 2022, the Pennsylvania Supreme Court denied Appellant's timely filed Petition for Allowance of Appeal. Following such denial, Appellant sought adjudication of his 2017 PCRA petition presently at issue.

- 3 -

The car stopped. I saw someone hang out the passenger side of the car and they had a gun in their hand. The car was approximately 20 feet away from us and it was pretty dark at the time. I did not have a clear view of the person hanging out of the car. The only thing I could see was that this person appeared to have braids in his hair and that they were hanging down on either side of his head. At the time I may have recognized the car but I was not able to recognize any of the occupants. The person with the gun opened fire and we all ducked for cover. As I remember the shooter fired somewhere between six and nine shots and then the car sped away. We all got up and checked to make sure everyone was okay and we walked back to the house where I saw Tori[e] Jones lying on the ground.

. . .

Later that night two detectives came to the house where I was staying at 1603 Brighton Pl. They spoke with me as well as my cousin, Michael Kyles. They took us into separate rooms for the interviews. I told them at that time that I was unable to recognize the shooter or anyone in the car and I told them that the shooter appeared to have braids going down each side of his face. I believe that I spoke to the police on more than one occasion until the day of trial and on one occasion I may have been shown a photo array. Up until the day of trial I never identified Edward Walls as the shooter. Walls and I went to the same school but were from different neighborhoods and consequently we did not get along. I can emphatically say that I never saw Walls shoot anyone and I did not recognize him in the car the night that Tori[e] Jones was killed. I'm not sure why I testified that Walls was the shooter but it may have had something to do with seeing his name in the newspaper and wanting to get revenge for Tori[e]'s killing. I ran into a cousin of Edward Walls and I told him the same thing I'm telling you. I told him that I wasn't sure that Walls was ever involved in the shooting and that if I could do anything to help clear his name I would be willing to do so. I have not been offered money or any other form of payment to provide this statement nor have I been threatened or pressured by anyone to tell the truth about this case.

. . . .

PCRA petition, filed 8/2/17, at Exhibit A.

Represented by counsel, Appellant appeared before the PCRA court on June 8, 2023, for an evidentiary hearing, at which Starlin Kyles, Appellant's sister Nancy Turner, and Appellant Edward Walls testified. Upon consideration of their testimonies and post-hearing briefs, the PCRA court entered its Order of October 31, 2023, denying Appellant's petition for relief. This timely appeal followed.

Appellant raises the following issue for this Court's consideration:

> Whether the [PCRA] court's decision that the PCRA petition was time-barred must be rejected because the decision conflicts with ***Commonwealth v. Lesko***[, 15 A.3d 345, 374 (Pa. 2011)]?

Brief for Appellant, at 2.

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion.

***Commonwealth v. Wilson***, 273 A.3d 13, 18 (Pa. Super. 2022) (citations omitted).

From Appellant's question, we infer that he has misconstrued both the ***Lesko*** holding and the basis for the PCRA court's timeliness determination. This Court has provided an apt summary of ***Lesko***:

> In [***Lesko***], a capital case, the Third Circuit Court of Appeals remanded for a new sentencing hearing due to improper comments made by the prosecutor during the penalty phase of

- 5 -

Lesko's trial. *Id.* at 357. Lesko was again sentenced to death on remand, and was unsuccessful in his subsequent direct appeal. *See Commonwealth v. Lesko*, 553 Pa. 233, 719 A.2d 217 (1998), *cert. denied,* 525 U.S. 1108, 119 S.Ct. 878, 142 L.Ed.2d 778 (1999). Pennsylvania's governor signed a warrant for Lesko's execution soon thereafter. *Lesko*, 15 A.3d at 358. Lesko quickly filed a petition under the PCRA, attempting to challenge his conviction and his sentence, and also moved for a stay of execution. *Id*. The PCRA court granted the stay and appointed counsel. *Id*.

After a hearing on the amended PCRA petition, the PCRA court determined that Lesko was entitled to a new trial and new penalty hearing. *Id*. The Commonwealth filed an appeal. *Id*. Lesko filed a cross-appeal, raising those issues contained within his PCRA petition for which he had not obtained relief. *Id*. The Commonwealth argued that any issues related to Lesko's original trial ("guilt phase claims") were time-barred. *Id.* at 359. In his petition, Lesko had raised several claims of trial counsel's ineffectiveness. The PCRA court granted Lesko a new trial due to trial counsel's interference with Lesko's right to testify at trial, counsel's ineffectiveness related to certain *Brady*[fn] evidence that had not been turned over, and counsel's failure to develop impeachment evidence. *Id*.

---

Fn. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

---

According to the Commonwealth, issues related to the guilt phase had to be presented by January 16, 1997, the date on or before which a first PCRA petition could have been timely filed [pursuant to provisions applying to older cases originating before enactment of the PCRA]. *Id*. In contrast, Lesko argued that his sentence did not become final until January 19, 1999, when the United States Supreme Court denied his petition for *certiorari*, and that his petition filed on May 24, 1999, was therefore timely. *Id*. After considering the specific provisions and purposes of the PCRA, and recognizing the limited role of the lower federal *habeas* courts in reviewing state court criminal judgments, the Pennsylvania Supreme Court concluded that Lesko was barred from raising issues related to the guilt phase of his trial, but could challenge his new sentence. *Id.* at 360. Our Supreme Court explained:

- 6 -

> The new sentencing proceeding and its result are the cause of the defendant's continuing restraint; and that proceeding is sufficiently distinct from the initial sentencing proceeding that collateral review of issues specific to the resentencing is consistent with the plain intent and purpose of the PCRA.... [A] limited grant of federal *habeas* sentencing relief does not give rise to a "right" to full-blown serial PCRA review of a trial whose result (conviction) has long been final.
>
> \* \* \*
>
> Lesko's "right" to first petition PCRA review is necessarily confined to that part of the final Pennsylvania judgment that was disturbed by the federal *habeas* proceedings. All other aspects of the original judgment remain as before – **final**.

> ***Id.*** at 366 (emphasis in original). Thus, because the Third Circuit's grant of relief involved only sentencing, Lesko was entitled to file a first PCRA petition related to those sentencing claims, despite his conviction occurring more than one year before the petition was filed. ***Id.*** at 367.

***Commonwealth v. Min***, 320 A.3d 727, 730–31 (Pa. Super. 2024).

Here, the PCRA court complied with ***Lesko*** when it concluded that a timeliness inquiry of Appellant's present PCRA petition, which raises an issue unrelated to the sentencing issues addressed in Appellant's most recent appeals described *supra*, begins by reference to the date on which his original judgment of sentence became final, *i.e.*, on August 11, 1999. Thus, as discussed *infra*, the PCRA court correctly reviewed whether the patently untimely present petition, filed 18 years after his judgment of sentence became final, not only raised a viable timeliness exception under Section

9545(b)(1) but also complied with the due diligence requirements of Section 9545(b)(2) that existed at the time he filed the present petition.[2]

Turning to the issue of the present petition's timeliness, we note that neither this Court nor the PCRA court has jurisdiction to consider the merits of any claims raised in an untimely PCRA petition. *See Commonwealth v. Ballance*, 203 A.3d 1027, 1030-31 (Pa. Super. 2019). In this respect, Section 9545(b)(1) provides as follows:

> Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

---

[2] At the time Appellant filed the underlying petition in this matter, the PCRA provided that petitioners invoking a timeliness exception had to file a petition "within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2). Thereafter, the General Assembly amended the PCRA to increase this time period to one year effective as of December 24, 2018. Accordingly, we will evaluate Appellant's petition pursuant to the 60-day standard that was in force when it was filed.

42 Pa.C.S. § 9545(b)(1)(i-iii). Any petitioner invoking one of these exceptions must file a petition "within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2). Additionally, this Court has stated that the petitioner "bears the burden of pleading and proving an applicable statutory exception." *Commonwealth v. Pew*, 189 A.3d 486, 488 (Pa. Super. 2018).

There is no dispute that the instant petition, filed in 2017, was facially untimely. Therefore, Appellant had the burden to plead and prove one of the enumerated exceptions to the PCRA's time bar in his petition before the PCRA court could consider the merits of any of his claims.

As noted, Appellant's claim arguably implicates two Section 9545(b) exceptions in his *pro se* petition. For a claim to fall within the governmental interference exception at Section 9545(b)(1)(i), "the petitioner must plead and prove the failure to previously raise the claim was the result of interference by government officials, and the information could not have been obtained earlier with the exercise of due diligence." *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1268 (Pa. 2008) (citation omitted). Similarly, in order to successfully invoke the newly discovered facts exception under Section 9545(b)(1)(ii), a petitioner must "establish that the facts upon which the claim is based were unknown to him and could not have been ascertained by the exercise of due diligence." *Commonwealth v. Burton*, 158 A.3d 618, 629 (Pa. 2017). Finally, pursuant to § 9545(b)(2) as it existed at the time Appellant filed his petition, a petition invoking either Section 9545(b)(1)

exception shall be filed within 60 days of the date the claim could have been presented.

We consider whether Appellant met the 60-day due diligence requirement that applied at the time he filed the present PCRA petition, as we find it dispositive. The notes of testimony from Appellant's June 8, 2023, PCRA evidentiary hearing establish that eyewitness Starlin Kyles testified that "approximately a year or two" transpired between the time the investigator spoke to him and the time he signed the statement at issue. N.T., 6/8/23, at 30. Appellant's sister, who hired the investigator, did not rebut this testimony, as she could recall neither when she learned of Mr. Kyles' willingness to provide a written recantation statement nor when she thereafter hired an investigator to interview Mr. Kyles and procure a statement. N.T. at 33-34.

Sitting as finder of fact, the PCRA court deemed credible the testimony of Mr. Kyles to the extent he recalled both informing an investigator in 2015 or 2016 that his identification testimony at Appellant's trial was false and, "approximately a year or two" later, signing a statement—prepared by the investigator—to that effect. Specifically, the PCRA court observed,

> During the Hearing, the [PCRA court] had the opportunity to observe, hear, and evaluate the witnesses as they testified. The [PCRA court] did not believe that Ms. Turner, who was approached by a family friend who informed her that Mr. Kyles wanted to make a statement about her brother, never learned the contents of that statement at the time; did not know what Mr. Kyles intended to say to the investigator, whom she hired as far back as 2015 or 2016; and did not inform Mr. Walls what Mr. Kyles was going to tell the investigator also as far back as 2015 or 2016. [N.T., 6/8/23], at 26, 30, 33. Ms. Turner's statements to the contrary

were not credible. *Id.* at 33-34. Similarly, Mr. Walls' testimony that he did not know the content of the Statement prior to receiving it in July 2017 and that he did not know that Mr. Kyles was going to provide such a statement was not credible. *Id.* at 35. Simply put, the [PCRA court], sitting as factfinder, did not find that Mr. Walls demonstrated by credible evidence that he lacked knowledge of what Mr. Kyles was going to say in the Statement until 2017, even though the contents of the Statement—provided around 2014—had been communicated to an investigator for Mr. Walls (and hired by his sister at the advice of Mr. Walls' counsel) in 2015 or 2016. Mr. Walls had knowledge of the contents of Mr. Kyles' statement as early as 2015 and as late as 2016.

PCRA Court Opinion, 2/22/2024, at 9-10.

Our review of the record supports the PCRA court's determination in this regard. Therefore, because Appellant filed the present petition more than 60 days after the date on which the claim could have been presented, he is not entitled to relief on his 2017 PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/14/2024

- 11 -